# Richmond

## MICHAEL NICHOLAOU v. GARNET L. HARRINGTON.

January 14, 1977.

Record No. 751522.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*William B. Smith (David L. Horne; Guy, Cromwell, Betz, Smith, Culverhouse & Dickerson,* on briefs), for plaintiff in error.

*Gilbert H. Wilson (Preston, Preston, Wilson and Lambert,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Michael Nicholaou, plaintiff, filed his motion for judgment in the trial court against Garnet L. Harrington, defendant, seeking damages for injuries alleged to have been received in a collision between the motorcycle operated by plaintiff and a pickup truck operated by defendant. A jury trial resulted in a verdict for defendant. The trial court overruled plaintiff's motion to set aside the verdict and entered judgment on the verdict. In his appeal plaintiff contends that the trial court erred in not ruling as a matter of law that defendant's negligence was the sole proximate cause of the accident, erred in ruling on the admissibility of certain evidence, and erred in instructing the jury.

The accident occurred in the city of Virginia Beach on June 20, 1972, at 8:30 or 8:45 a.m., in the left-hand northbound lane of Independence Boulevard, a four-lane divided highway, at the T-intersection made by Five Forks Road, a two-lane street which entered Independence Boulevard from the east and had a stop sign at the intersection. The weather was cloudy, but Independence Boulevard, which had an asphalt surface and a cut in the median strip at Five Forks Road, was level, straight, and dry. Nicholaou was proceeding north on Independence Boulevard behind an automobile which, after giving a turn signal, turned to the right into Five Forks Road. Harrington was proceeding west on Five Forks Road with the intention of turning south on Independence Boulevard. He stopped at the stop sign and waited for traffic on Independence Boulevard to pass. Seeing the car to his left on Independence Boulevard turning into Five Forks Road, Harrington proceeded across the northbound lanes of Independence Boulevard towards the cut in the median strip and collided with Nicholaou's motorcycle.

The investigating officer, D. L. Rinick, Jr., of the Virginia Beach Police Department, called as a witness for plaintiff,

testified that he arrived at the scene approximately five minutes after being notified of the accident. The truck was damaged on its left front end, the motorcycle on its front end and rear wheel. Nicholaou was lying on the ground in the median strip, and Harrington, who was uninjured, was with him. Within a minute and a half after the officer's arrival the rescue squad came and removed Nicholaou to the hospital. Harrington informed the officer that he had stopped at the stop sign on Five Forks Road; that he saw the turn signal on the vehicle making a right turn into Five Forks Road "and saw nothing behind the vehicle"; that he pulled out to cross the northbound lanes of Independence Boulevard and was struck in the left front of his truck by the motorcycle; that he first saw the motorcycle when it struck his truck; and that he estimated his speed at five to seven miles per hour.

The officer measured a continuous skid mark made by the motorcycle extending for thirty feet, starting approximately a foot or two from the median strip and continuing at an angle towards the cut in the median strip. He had made a diagram, based upon his conversation with Harrington and with another man who appeared and identified himself as a witness, which showed that the motorcycle moved from the right lane to the left lane before colliding with Harrington's truck. According to the officer's testimony, the speed limit on Independence Boulevard was 45 miles per hour and the traffic was "medium to heavy" when he arrived at the scene.

Nicholaou testified that he was driving to work by his usual route along Independence Boulevard. After passing the Ewell Road intersection, 780 feet south of Five Forks Road, he observed a car giving a signal for a right turn about 200 feet north of Ewell Road and about 60 to 65 feet in front of him in the right-hand northbound lane. The motorcycle and the car were moving at approximately 40 miles per hour. Plaintiff slowed, turned around to see if there were vehicles behind him, and changed lanes approximately 480 feet south of Five Forks Road. He accelerated to 40 miles per hour as the car in front slowed. When he was about 60 to 70 feet from Five Forks Road and the turning car was about 30 feet from that intersection, he saw the front end of a pickup truck entering and occupying approximately three fourths of the right-hand northbound lane of Independence Boulevard. He applied his brakes, swerved, and

skidded to his left. He last saw, before being knocked unconscious by the impact, the turning car in the middle of its turn into Five Forks Road. Plaintiff did not see anything on Five Forks Road as he approached the intersection because he was looking at the road in front of him. He was familiar with the highway and knew that intersecting streets were controlled by stop signs.

The defendant testified that he waited at the stop sign on Five Forks Road for traffic to clear on Independence Boulevard before he entered that highway to turn south. He waited for a minute and a half or two minutes, and all northbound vehicles cleared the intersection except one car about 175 feet back. When that car was 75 or 80 feet from the intersection its turn signal was activated, and when it was 50 to 75 feet away from him the defendant, seeing nothing else in either lane of Independence Boulevard, proceeded across the left-hand northbound lane. When he was approximately halfway across this lane, he saw the plaintiff's motorcycle appear about a car length behind the turning car. He estimated the speed of the motorcycle at 55 miles per hour. The front wheel of the motorcycle was in the left lane, and the motorcycle was moving at an angle from the right lane to the left lane. He applied his brakes, but the motorcycle was "on top" of him and collided with his truck. He went to the aid of plaintiff, who, upon regaining consciousness, asked, "Whose fault was it?" Harrington asked the man in the turning car, who had stopped and got out of his vehicle, to call an ambulance and the police. The police officer arrived in five or six minutes, "maybe a little more"; the ambulance arrived "a short time" later.

While Harrington was sitting in the police car, the driver of the turning car approached. Over plaintiff's objection, Harrington was permitted to testify that this witness told the officer that the plaintiff was "coming too fast", and that he thought the motorcycle was going to run into the back end of his car, but plaintiff "swerved".

The defendant was further permitted to testify, over plaintiff's objection, as to his "reaction" to what the witness said. Defendant's testimony was that he "would have pursued this witness", but he thought the officer was writing down what was said and that the man therefore would be available in the

event of litigation. The identity of the witness was not ascertained, and he did not appear to testify.

Officer Rinick, recalled by plaintiff as a rebuttal witness, gave a different account of the information furnished by the unknown motorist. Rinick testified that when the man approached his police car and said that he knew something about the accident, although he had not seen the impact, the officer took him aside and questioned him. The motorist then stated that the motorcycle was behind him and moved to the left lane as he was making his right turn. He did not tell Rinick that the motorcycle was going too fast or that it was too close behind his car. Accordingly, Rinick did not think that it was necessary to take the man's name.

The trial court admitted, as part of the *res gestae*, the testimony of the defendant as to what the unknown motorist said to Officer Rinick. This ruling constitutes reversible error.

Under the *res gestae* exception to the hearsay rule, excited utterances prompted by a startling event, and not the product of premeditation, reflection, or design, are admissible in evidence. The spontaneity of the utterance is deemed to guarantee its trustworthiness, even though it is hearsay evidence which would otherwise be excluded. The declaration must be made at such time and under such circumstances as to preclude the presumption that it is the result of deliberation. *Transit Company* v. *Brickhouse, Adm'r*, 200 Va. 844, 847-48, 108 S.E.2d 385, 387-88 (1959); *Chappell* v. *White*, 182 Va. 625, 633-34, 29 S.E.2d 858, 861-62 (1944).

The statement said by the defendant to have been made by the unknown driver lacks the characteristics of a spontaneous utterance. It was made at least six or seven minutes, probably longer, after the accident, when the investigating officer was questioning the defendant about the event. There is no suggestion that this was an excited declaration uttered in instinctive reaction to a startling event. *See* McCormick on Evidence § 297, at 704-06 (2d ed. E. Cleary 1972). Accepting defendant's version, we nevertheless conclude that the statement was no more than a narrative account of what the declarant saw before the accident and his opinion of the manner in which the plaintiff was then operating his motorcycle. As such it was inadmissible hearsay evidence, the trustworthiness of which could not be assured. The trial court's error in

admitting it was prejudicial because we cannot say as a matter of law that the inadmissible evidence did not affect the jury verdict. Without this statement the only evidence as to how the accident happened was the testimony of the plaintiff and the defendant.

We reject the plaintiff's contention that the trial court should have sustained his motion to strike the defendant's evidence, made after the taking of all evidence had been completed, and should have submitted the case to the jury on the question of damages alone. Plaintiff argues, and defendant concedes, that the defendant was required to stop on Five Forks Road and yield the right-of-way to traffic on Independence Boulevard before entering that thoroughfare. Instruction No. 1, tendered by the plaintiff and granted by the trial court, which stated the defendant's duty to stop and, before proceeding, to exercise reasonable care to yield the right-of-way to the driver of a vehicle approaching in a lawful manner, became the law of the case. Defendant was not an insurer of plaintiff's safety. It was for a jury to determine whether defendant exercised reasonable care in entering the highway. *Umberger* v. *Koop*, 194 Va. 123, 131, 72 S.E.2d 370, 375 (1952).

We also find no merit in plaintiff's argument that there was no evidence to support instructions as to plaintiff's contributory negligence. Harrington testified that the plaintiff was running at 55 miles per hour, 10 miles per hour in excess of the speed limit, when he was approximately 35 feet away. For whatever weight the jury accorded it, this evidence was admissible. *See Moore* v. *Lewis*, 201 Va. 522, 525-26, 111 S.E.2d 788, 791 (1960) (estimate of 40 to 50 miles per hour made at about 50 feet); *Burton* v. *Oldfield*, 194 Va. 43, 48, 72 S.E.2d 357, 361 (1952) (estimate of 90 miles per hour made at about 90 feet). Moreover, the evidence raised factual issues as to contributory negligence and proximate cause to be determined by the jury.

Since the case will be remanded for a new trial we will review the manner in which the jury was instructed.

Instruction No. 11 [1] permitted the jury, if it believed that

---

[1] "INSTRUCTION NO. 11

"The Court instructs the Jury:
"That if you believe from the evidence that as the plaintiff approached the

defendant before entering the intersection looked to his left and in the course of ordinary care could not have seen plaintiff's motorcycle approaching, to find for the defendant. The effect of this instruction was to tell the jury that if defendant's view was blocked at the moment he looked, he was not negligent as a matter of law. But the defendant's duty was not so narrowly limited. The question was whether the defendant's failure to see or to anticipate the presence of the plaintiff, to look longer or more often than he did, or to wait for the turning car to complete its turn before he entered the intersection, was reasonable under all the circumstances. Instruction No. 11 did not correctly present this issue to the jury.

We also believe that Instruction No. 14 was inapplicable to the facts of the instant case and should not have been given. Instruction No. 14,[2] based on Va. Code § 46.1-213 (Repl. Vol. 1972),[3] set forth the duty of the driver of a vehicle to exercise ordinary care not to follow another vehicle too closely. But here Nicholaou was not following Harrington. The evidence was that Nicholaou was following a car driven by an unknown person in

---

intersection in question, that he was hidden from the view of the defendant by virtue of plaintiff's position in relation to an approaching vehicle in reasonable proximity to the intersection and that the plaintiff was not operating his vehicle in a lawful manner and if you further believe that the defendant, before attempting to enter the intersection, looked to his left and in the exercise of ordinary care could not have seen the vehicle operated by the plaintiff approaching, then the defendant was not guilty of failing to keep a proper lookout, and you shall find your verdict for the defendant."

[2]

"INSTRUCTION NO. 14

"The Court instructs the Jury:

"It is the duty of the driver of a motor vehicle to exercise ordinary care not to follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of both vehicles and the traffic upon, and conditions of, the highway at the time.

"And if you believe from the evidence that the plaintiff failed to exercise ordinary care in the performance of the foregoing duty, then he was negligent; and if you further believe from the evidence that any such negligence was the sole proximate cause of the collision, or that it proximately contributed to cause it, then you shall find your verdict in favor of the defendant."

[3] Code § 46.1-213 (Repl. Vol. 1972) provided as follows:

"§ 46.1-213. **Following too closely.** — (a) The driver of a motor vehicle shall not follow another motor vehicle, trailer or semitrailer more closely than is reasonable and prudent, having due regard to the speed of both vehicles and the traffic upon, and conditions of, the highway at the time.

. . . ."

the northbound outside traveling lane prior to the collision with Harrington in the inside passing lane of Independence Boulevard as Harrington proceeded across it. We conclude that the evidence as a matter of law failed to show that Nicholaou's action in following the other car was a proximate cause of the collision with Harrington. *See Colonial Motor Freight* v. *Nance*, 216 Va. 552, 558, 221 S.E.2d 132, 136 (1976).

On the other hand, we believe that Instruction No. 15 [4] was properly given. This instruction, based on Va. Code § 46.1-206 (Repl. Vol. 1972),[5] defined the duty of a driver not to move from one lane to another on a laned highway until he has exercised ordinary care to ascertain that the move can be made with safety. The evidence for the defendant indicated that as Nicholaou approached the intersection he suddenly moved from the right outside traveling lane going north into the inside passing lane at a time when defendant had already entered the inside passing lane. The statute was applicable to that movement, and we cannot say as a matter of law that Nicholaou's action was not a proximate cause of the accident. *See Ragsdale* v. *Jones*, 202 Va. 278, 281-82, 117 S.E.2d 114, 117 (1960).

---

[4] "INSTRUCTION NO. 15

"The Court instructs the Jury:

"Whenever any highway has been divided into clearly marked lanes for traffic, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver of such vehicle in the exercise of ordinary care ascertains that such movement can be made with safety. And if you believe from the evidence that the highway in this case was so marked and further believe from the evidence that the plaintiff violated the foregoing duty, then he was negligent.

"And if you further believe from the evidence that any such negligence was the sole proximate cause of the collision, or that it proximately contributed to cause it, then you shall find your verdict in favor of the defendant."

[5] Code § 46.1-206 (Repl. Vol. 1972) provided as follows:

"§ 46.1-206. **Special regulations applicable on streets and highways laned for traffic.** — Whenever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

. . .

"(b) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has ascertained that such movement can be made with safety;
. . . ."

For the reasons assigned, the judgment of the trial court will be reversed and the case remanded for a new trial consistent with the views herein expressed.

*Reversed and remanded.*