## Richmond

HENRY LEE GOINS, ETC. V. COMMONWEALTH OF
VIRGINIA

September 1, 1977.

Record No. 761131.

Present: All the Justices.

*Michael Hill Dills* for plaintiff in error.

*Alan Katz, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

The appellant, Henry Lee Goins, convicted by the trial court, sitting without a jury, was sentenced to serve 25 years in the penitentiary for robbery, 12 months in jail for carrying a concealed weapon, and 12 months in jail for brandishing a firearm, and to pay a fine of $100 for giving a false name to police officers. On appeal Goins contends that the trial court committed reversible error in overruling his motion to suppress certain identification statements made to the investigating officers by the victim of the robbery who died prior to trial.

About 4:05 a.m. on December 11, 1975, Detective L. I. Rawls, of the City of Norfolk Police Department, arrived at the Pembroke Towers Apartments in response to a call. Entering the lobby, Rawls found William B. Etheridge, conceded by Goins to have been at that time the night manager of the apartment building with his face "busted" and bloody, a front tooth missing, and his clothes "messed up." Short of breath, Etheridge spoke slowly and with difficulty in relating what had happened. The detective observed that the office area of the lobby was littered with papers and other articles and that drawers had been pulled out of desks. Rawls retrieved from the floor of the lobby a black leather glove for the right hand.

Sergeant J. R. Jarvis was in a police car approximately one-half mile away when he received a radio report that a robbery had been perpetrated at Pembroke Towers by a person identified only as a black male. Proceeding to the area, Jarvis came upon Goins, a black male, on Pembroke Avenue about three blocks from Pembroke Towers. When the officer got out of his car and asked him for identification, Goins pulled a pistol from one of two pocketbooks he was carrying, pointed it at Jarvis, and pulled the trigger. When the pistol failed to fire, Jarvis drew his weapon, disarmed and arrested Goins, and called on his radio for assistance. Officer James G. Ingram, who responded to Jarvis's call, transported Goins in a police van to Pembroke Towers.

About 4:15 a.m. or 4:20 a.m. Detective Rawls conducted Etheridge to the police vehicle parked outside the apartment building. Rawls testified that Etheridge looked at Goins and said, "This is the man who assaulted me and robbed me and took my gun." Rawls further testified that he received from Officer Ingram the two pocketbooks seized from Goins at the time of his arrest which contained, among other items, a black leather glove for a left hand that matched the glove found earlier by Rawls. Ingram also delivered to Rawls a black wallet, containing money, and a .25 caliber pistol, all of which Etheridge identified as his property. About 4:35 a.m. Goins was removed to police headquarters, where he gave his name as James Lloyd Smith and refused to sign the form on which was listed the property seized from him. The officers subsequently ascertained the suspect's correct name.

Etheridge, who suffered from a preexisting heart ailment, was admitted to a hospital shortly after the robbery, and he died approximately one month later. At trial, his widow identified as her husband's property the black wallet and the .25 caliber pistol taken from Goins. She further testified that her husband carried the wallet in the pocket of his trousers, and that when she went to the hospital to assist her husband she examined his clothes and found that this pocket had been torn away.

Goins, testifying in his own defense, denied having been at Pembroke Towers on the night of the robbery and denied ever having possession of the black glove which the officers testified was found in one of his pocketbooks.

■ Relying solely upon the *res gestae* exception to the general rule excluding hearsay evidence, the Attorney General contends that the trial court properly admitted the testimony of Detective Rawls and Officer Ingram as to the declarations made by Etheridge in identifying Goins and the property which Goins took from Etheridge in the robbery. We have had occasion recently, in *Nicholaou v. Harrington*, 217 Va. 618, 231 S.E.2d 318 (1977), to restate the principles governing the admissibility of *res gestae* declarations. Excited utterances prompted by a startling event, and not the product of premeditation, reflection, or design, are admissible, but the declaration must be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation. 217 Va. at 622, 231 S.E.2d at 321-22. There, we held that a statement

made by an unknown witness at least six or seven minutes after an automobile-motorcycle collision, when the investigating officer was questioning one of the parties to the accident, lacked the characteristics of a spontaneous utterance, was a narrative account of what the declarant saw and thought, and was inadmissible hearsay evidence.

In the present case, the declarations of the deceased victim, Etheridge, also lacked the characteristics of spontaneous utterances. The statements were made 10 to 15 minutes after Detective Rawls arrived at the scene of the robbery. They were made after the detective had questioned Etheridge about the crime. They were made after Etheridge had been led by Rawls from the Pembroke Towers to the police vehicle for the purpose of observing Goins and examining the property found in his possession. As the evidence does not support the declarations of Etheridge as excited utterances, we conclude that the trial court erred in admitting them under the *res gestae* exception. Nevertheless, we also hold that error was harmless beyond a reasonable doubt, because the circumstantial evidence adduced against Goins was overwhelming without the identification declarations of Etheridge. *See Chapman* v. *California,* 386 U.S. 18, 23-24 (1967), *rehearing denied,* 386 U.S. 987 (1967); *Vass* v. *Commonwealth,* 214 Va. 740, 745, 204 S.E.2d 280, 284 (1974).

The trier of fact could reasonably infer, from the evidence as to Etheridge's appearance and demeanor and the disarray in the office, that Etheridge had been assaulted and injured by an assailant with whom he had struggled. Etheridge's wallet and pistol, found by the officers in Goin's possession a few minutes after the robbery, were identified by Etheridge's widow, and Goins did not attempt to explain his possession of these articles. The black leather glove found on the lobby floor by Rawls matched the one which Ingram testified that he seized from Goins. The pocket in which Etheridge carried his wallet was torn out of his trousers, from which it reasonably could be inferred that his wallet had been forcibly taken. Moreover, Goin's conduct in attempting to shoot the officer who stopped him and asked for identification a few minutes after the robbery was further evidence of his guilt.

We hold that the evidence viewed in the light most favorable to the Commonwealth, excluded every reasonable hypothesis of innocence and established an unbroken chain of circumstances

from which the trier of fact, as the sole judge of the credibility of witnesses, could properly find, beyond a reasonable doubt, that Goins committed the robbery. *See Higginbotham* v. *Commonwealth*, 216 Va. 349, 218 S.E.2d 534 (1975); *Van Dyke* v. *Commonwealth*, 196 Va. 1039, 86 S.E.2d 848 (1959). No question has been presented affecting the misdemeanor convictions and the judgment of the trial court will therefore be affirmed as to these as well as to the robbery conviction.

*Affirmed.*