Present:  All the Justices

MICHAEL DAVID CLAGETT
                              OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v.  Record Nos. 952162 & 952163        June 7, 1996

COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                        Edward W. Hanson, Jr., Judge


    In this appeal, we review the capital murder convictions and

five death sentences imposed upon Michael David Clagett (Clagett)

for the murders of Abdelaziz Gren, Wendell Parish, Karen Sue

Rounds and Lam Van Son.
                                    **I.**
                            **PROCEEDINGS**


    On October 3, 1994, two indictments were returned against

Clagett.  In the first indictment, Clagett was charged with

robbery, Code § 18.2-58, use of a firearm in the commission of a

robbery, Code § 18.2-53.1, four separate counts of capital murder

during the commission of a robbery, Code § 18.2-31(4), and four

separate counts of use of a firearm in the commission of murder.

 Code § 18.2-53.1.[1]  In the second indictment, Clagett was

charged with one count of multiple homicide capital murder.  Code

§ 18.2-31(7).  The second indictment predicated the charge of

multiple homicide capital murder on the killing of all four

victims as part of the same act or transaction.

_____

    [1]Clagett's convictions on the lesser offenses were appealed
to the Court of Appeals; we have certified the record of those
convictions to this Court and have consolidated it with the
capital murder appeal.  Code § 17-116.06.  The first indictment
also charged Clagett with possession of a handgun after having
been convicted of a felony.  Code § 18.2-308.2.  Upon Clagett's
motion this charge was severed for separate trial and is not part
of this appeal.

A jury trial began on June 26, 1995 and spanned ten trial days.  At the conclusion of the guilt phase, the jury convicted Clagett of all charges.  At the conclusion of the penalty phase, the jury returned a verdict of five death sentences, based upon a finding of both future dangerousness and vileness.  The trial court entered judgment on the jury verdict.  Additional sentences totaling 43 years on the lesser charges were also imposed.  Other aspects of the proceedings relevant to this appeal, in which forty assignments of error are made, will be recounted in the opinion where specific issues are addressed.

**II.**
**EVIDENCE**
**Guilt Phase**

We will review the evidence in the light most favorable to the Commonwealth, the prevailing party below.  Cheng v. Commonwealth, 240 Va. 26, 42, 393 S.E.2d 599, 608 (1990).  Richard T. Reed, a regular patron, arrived at the Witchduck Inn (the Inn), a tavern and restaurant in Virginia Beach, about midnight on June 30, 1994.  Although the Inn usually remained open until 2:00 a.m., Reed found that the front door was locked.  Reed could hear music playing inside.

Although he knew that it would normally be kept locked, Reed went to the rear door entrance to the Inn and found it unlocked.  Upon entering the Inn, he discovered the bodies of Lam Van Son, the Inn's owner, Inn employees Wendell Parish and Karen Sue Rounds, and Abdelaziz Gren, an Inn patron.  Each victim had been shot once in the head.  The Inn's cash register was open and empty.

Based upon information supplied by Denise Holsinger, Clagett's girlfriend, Clagett was identified as a suspect in the killings. He was arrested on July 1, 1994 on a public intoxication charge. Once in custody, Clagett was served with arrest warrants for the murders. Clagett confessed to the killings, admitting that he and Holsinger had intended to "rob" the Inn and that Holsinger had taken approximately $400 from the cash register. Additional facts developed during the guilt phase of the trial will be recounted later in the opinion.

**Penalty Phase**

The Commonwealth presented evidence of Clagett's history of brutal domestic violence against his former wife. The jury was shown two photographs of the wound sustained by Lam Van Son. The lead investigator testified that Clagett showed great remorse for his acts during his confession. Additional facts developed during the penalty phase of the trial will be recounted later in the opinion.

**III.**
**ISSUES WAIVED**

Because Clagett did not address in his brief the issues raised in assignments of error 5, 17, 19, 28, 29, and 35 he has waived them.[2] Rule 5:27. Also, the argument advanced on appeal

_____

[2]These assignments of error are:

5: Denial of motion to redact statements in confession concerning Clagett's intention to pled guilty and his desire to waive his right to counsel.
17: Admission of autopsy reports as duplicative of medical examiner's testimony.
19: Admission of firearm/bullet fragments comparison report as duplicative of expert testimony.
28: Method of selection of alternate jurors.

with respect to assignment of error 14 relating to the cross-examination of Reed was not made before the trial court; accordingly, we will not consider that assignment of error.  Rule 5:25.

## IV.
## ISSUES PREVIOUSLY DECIDED

Clagett has raised a number of issues that we have rejected in previous decisions.  Finding no reason to modify our previously expressed views, we reaffirm our earlier decisions and reject the following contentions.

Clagett requested a bill of particulars which, in effect, would have required the Commonwealth to produce all the evidence it intended to introduce during the guilt and penalty phases of the trial.  We have previously held that this is not a proper use of a bill of particulars.  Quesinberry v. Commonwealth, 241 Va. 364, 372, 402 S.E.2d 218, 223, cert. denied, 502 U.S. 834 (1991).

Clagett requested the assistance of an expert medical witness to examine his former spouse in order to refute her claims of domestic violence.  We have previously held that an indigent defendant is not entitled to every resource he requests from the trial court.  The Commonwealth is required to provide only those resources necessary for a basic, adequate defense. O'Dell v. Commonwealth, 234 Va. 672, 686, 364 S.E.2d 491, 499, cert. denied, 488 U.S. 871 (1988); see also Britt v. North Carolina, 404 U.S. 226, 227 (1971).

(..continued)
29: Failure to grant motion for mistrial during Commonwealth's closing argument.
35: Permitting the jury to consider evidence of vileness.

Clagett sought additional peremptory challenges during jury selection.  We have repeatedly held that there is no right to additional peremptory challenges.  See, e.g., Strickler v. Commonwealth, 241 Va. 482, 489, 404 S.E.2d 227, 232, cert. denied, 502 U.S. 944 (1991).

Clagett objected to the introduction of a videotape of a news interview he gave to a local reporter on the ground that the Commonwealth had failed to show that the reporter was not available.  The interview was admissible as a party admission, and, thus, not subject to exclusion under the hearsay rule. Quintana v. Commonwealth, 224 Va. 127, 148, 295 S.E.2d 643, 654 (1982), cert. denied, 460 U.S. 1029 (1983).

Clagett asserts under numerous theories that the Virginia death penalty statutes are unconstitutional.  We have previously addressed each of these contentions, sustaining in each instance the constitutionality of our death penalty statutes.  See, e.g., Breard v. Commonwealth, 248 Va. 68, 74, 445 S.E.2d 670, 674-75, cert. denied, ___ U.S. ___, 115 S.Ct. 442 (1994)(meaningful guidance to the jury on factors to consider in fixing the death penalty); Satcher v. Commonwealth, 244 Va. 220, 228, 421 S.E.2d 821, 826 (1992), cert. denied, 507 U.S. 933 (1993) (appellate review of capital cases is adequate); Stewart v. Commonwealth, 245 Va. 222, 229, 427 S.E.2d 394, 399-400, cert. denied, 510 U.S. ___, 114 S.Ct. 143 (1993)(future dangerousness predicate is not impermissibly vague); Watkins v. Commonwealth, 229 Va. 469, 490-91, 331 S.E.2d 422, 438 (1985), cert. denied, 475 U.S. 1099 (1986)(instructing jury on consideration of mitigating factors).

## V.
## MATTERS WITHIN THE TRIAL COURT'S DISCRETION

A number of the issues raised by Clagett concern rulings committed to the trial court's discretion. In each of the following instances we find no evidence to support a finding of an abuse of that discretion, and, accordingly, we hold that no error occurred.

The trial court permitted the jury to be shown a videotape of the crime scene in which two of the bodies had been moved from their original positions by emergency personnel. The trial court instructed the jury as to this fact. Accordingly, it was not an abuse of discretion to permit the jury to view the videotape. Washington v. Commonwealth, 228 Va. 535, 552, 323 S.E.2d 577, 588 (1984), cert. denied, 471 U.S. 1111 (1985).

During the guilt phase, the Commonwealth called Wendy Singer as a witness. Clagett objected to her testimony and moved for a mistrial on the ground that Singer had been identified as a potential witness only shortly before trial and that the Commonwealth had indicated that she would be called only during the penalty phase. Whether an occurrence at trial "is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case." Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420, cert. denied, 510 U.S. ___, 114 S.Ct. 171 (1993). Even accepting Clagett's assertions as true, he was nonetheless informed that Singer was a potential witness prior to trial. Accordingly, there was no prejudice to Clagett.

Clagett objected to the introduction of a crime scene photograph during redirect examination of the medical examiner. On cross-examination of this witness, Clagett had questioned whether an examination of the crime scene photographs would have been beneficial to her investigation. She conceded that they would have been beneficial, but that she had not examined any crime scene photographs. On redirect, the Commonwealth produced a crime scene photograph and asked whether the position of the body of the victim would in some way alter the witness's conclusions in her report. Clagett asserted that the admission of the photograph was erroneous in that it was duplicative and that the gruesomeness of the photograph was prejudicial. He raised a similar objection to the introduction of the two photographs showing the wounds of Lam Van Son during the penalty phase. Clagett further objected to the form and size of certain photographs introduced.

The admission into evidence of photographs of the body of a murder victim is left to the sound discretion of the trial court and will be disturbed only upon a showing of a clear abuse of discretion. Williams v. Commonwealth, 234 Va. 168, 177, 360 S.E.2d 361, 367 (1987), cert. denied, 484 U.S. 1020 (1988). A graphic photograph is admissible so long as it is relevant and accurately portrays the scene of the crime. Washington v. Commonwealth, 228 Va. at 551, 323 S.E.2d at 588; see also Clozza v. Commonwealth, 228 Va. 124, 135, 321 S.E.2d 273, 280 (1984), cert. denied, 469 U.S. 1230 (1985).

Clagett objected to the introduction of Commonwealth's

exhibit 42, a photograph of money taken from him at the time of his arrest, on the ground that the officer could not positively identify the money as that taken from Clagett. "We have long recognized and admitted photographs . . . by holding that a photograph which is verified by the testimony of a witness as fairly representing what the witness has observed is admissible in evidence." Ferguson v. Commonwealth, 212 Va. 745, 746, 187 S.E.2d 189, 190, cert. denied, 409 U.S. 861 (1972). Here, the officer who seized the items was able to identify a distinctive key ring in an accompanying photograph as having been one taken from Clagett and photographed at the same time as the money taken from him. This testimony was adequate to establish the authenticity of the representation of the photograph.

During the penalty phase, Clagett repeatedly objected to the testimony of his former wife regarding his propensity to extreme domestic violence. The trial court sustained one such objection and Clagett then sought a mistrial. As noted above, the granting of a mistrial is a matter within the trial court's discretion. Beavers, 245 Va. at 280, 427 S.E.2d at 420. We cannot say that the trial court erred in determining that the Commonwealth's actions were not so prejudicial as to warrant a mistrial.[3]

**VI.**
**PRE-TRIAL ISSUES**

A. Suppression of post-arrest statements

---

[3]On brief, Clagett attempts to relate the single sustained objection to the entire testimony of his former wife. That argument was not made below and will not be considered for the first time of appeal. Rule 5:25.

Clagett sought to suppress his post-arrest statements on the ground that his arrest was pretextual. Clagett was arrested for public intoxication after he was discovered "passed out" in the shrubbery of an apartment complex by an officer responding to a citizen complaint. While the arresting officer was aware that Clagett was the subject of a "be on the lookout" notice to notify the detective unit if he was found, the record adequately supports the trial court's factual finding that the officer had probable cause to arrest Clagett on the public intoxication charge. See Watkins, 229 Va. at 477, 331 S.E.2d at 429-30.

B. Failure of Commonwealth to disclose certain statements

At the suppression hearing, the arresting officer was permitted, without objection, to refresh her memory by examining an investigation memorandum prepared following the arrest. During cross-examination, it was determined that the officer prepared this memorandum using handwritten notes taken at the time of Clagett's arrest. Clagett then requested that these notes be produced for his examination. At the request of the trial court, the officer retrieved her notes which were examined by the Commonwealth. The Commonwealth represented to the trial court that no statements made by Clagett or other potentially exculpatory evidence were contained within the notes and, on that basis, the trial court denied Clagett's request to review the notes.

Clagett also sought disclosure of statements made by Holsinger. The Commonwealth represented that her statements were wholly inculpatory and did not offer any exculpatory benefit to

Clagett.  The trial court denied Clagett's request.  Holsinger did not testify at Clagett's trial.

In neither instance did the trial court review the material, nor did Clagett request that the trial court undertake an in camera review.  The notes and the statement were not made a part of the record.  Accordingly, we must limit our review to the rulings made by the trial court based upon the representations of the Commonwealth.

There is no general right to discovery of witness statements, reports, or other memoranda possessed by the Commonwealth.  Bunch v. Commonwealth, 225 Va. 423, 436, 304 S.E.2d 271, 278, cert. denied, 464 U.S. 977 (1983); see also Spencer v. Commonwealth, 238 Va. 295, 303, 384 S.E.2d 785, 791 (1989), cert. denied, 493 U.S. 1093 (1990).  Because the requested documents were represented as having no exculpatory material, and nothing in the record before us contradicts those representations, we hold that the trial court properly denied Clagett's requests in these two instances.

**VII.**
**VOIR DIRE ISSUES**

A. Proposed question for the jury panel

During voir dire, Clagett sought to ask the members of the venire if they would automatically impose the death penalty even if they accepted Clagett's theory of the case.  The trial court ruled that this was not the proper inquiry.  The trial court instead permitted the members of the venire to be asked whether they would automatically impose the death penalty "no matter what

the facts were."  See Morgan v. Illinois, 504 U.S. 719, 723 (1992).  We hold this inquiry was adequate to assure the removal of those jurors who would invariably impose capital punishment. Turner v. Commonwealth, 221 Va. 513, 523, 273 S.E.2d 36, 42-43 (1980), cert. denied, 451 U.S. 1011 (1981); see also Mueller v. Commonwealth, 244 Va. 386, 400-01, 422 S.E.2d 380, 390 (1992), cert. denied, 507 U.S. 1043 (1993).

### B. Juror disqualification

Clagett further challenges the trial court's refusal to remove for cause three veniremen.  During voir dire, Gordon Holmes stated that it was "silly" of Clagett to confess "at the early stages of the charges."  Holmes later stated, however, that he did not know Clagett's state of mind at the time of his confession and twice stated that he could base his verdict solely upon the evidence presented in the trial.  Holmes was selected as a member of the jury.

Responding to a lengthy question posed by Clagett containing hypothetical facts similar to the case, Steve Gunby stated that he would impose the death penalty without considering a sentence of life imprisonment.  When questioned further by the Commonwealth, Gunby stated that he had misunderstood the question and that he could consider imposition of life imprisonment.  The defense used one of its peremptory strikes to remove Gunby from the panel.

Thomas Dillon initially indicated that in order to consider a sentence of life imprisonment, he would require the defense to present mitigating evidence.  The trial court explained to Dillon

that the defense could not be required to present such evidence. Dillon then stated, in response to a further question from Clagett, that he could decide the issue "based on what's put in front of me throughout this process and on the instructions of the court." The defense used one of its peremptory strikes to remove Dillon from the panel.

In each instance, Clagett confines his argument to a discrete portion of the examination of each juror. We must consider the voir dire as a whole, not just isolated statements. Mackall v. Commonwealth, 236 Va. 240, 252, 372 S.E.2d 759, 767 (1988), cert. denied, 492 U.S. 925 (1989). The trial court's decision whether to strike a juror for cause is a matter submitted to its discretion and will not be disturbed on appeal unless the refusal constitutes manifest error. Stockton v. Commonwealth, 241 Va. 192, 200, 402 S.E.2d 196, 200, cert. denied, 502 U.S. 902 (1991). In the present case, the trial court had the opportunity to observe each juror's demeanor when evaluating his responses to the questions of counsel and the instructions of the court. Nothing in the record suggests that the trial court abused its discretion in refusing to strike these jurors for cause.

## VIII.
## GUILT PHASE ISSUES

### A. Evidence of prior criminal acts

Clagett objected to the introduction of portions of his post-arrest statement in which he discusses his prior criminal history. Assuming, without deciding, that such evidence was not

admissible to show the voluntariness of the statement as the Commonwealth asserts, but see Williams v. Commonwealth, 11 Va. App. 149, 152, 396 S.E.2d 860, 862 (1990), we hold that its introduction was harmless beyond any reasonable doubt.  The trial court gave a proper limiting instruction which the jury is presumed to have followed.  LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), cert. denied, 464 U.S. 1063 (1984).  Moreover, the evidence adduced against Clagett was overwhelming, precluding the possibility that any prejudice which might have resulted from the introduction of prior criminal history evidence could have improperly influenced the jury's decision-making process.  See Goins v. Commonwealth, 218 Va. 285, 288, 237 S.E.2d 136, 138 (1977).

## B. Testimony of John Ward

Firearms expert John Ward testified that he was able to make determinations of gunshot distances and residue.  Clagett objected that this evidence had not been disclosed prior to trial and sought a mistrial.  We hold that the trial court properly ruled that Clagett had been given an opportunity to interview Ward prior to trial, and since the portion of Ward's testimony to which Clagett objected was not part of Ward's written report, his findings were not subject to disclosure under Rule 3A:11.  See O'Dell, 234 Va. at 682-83 and n.3, 364 S.E.2d at 497 and n.3.

## C. Testimony of Sonja Moore

After testifying for the Commonwealth, forensic witness Sonja Moore overheard Clagett's lawyers discussing a factual misstatement she had made in her testimony.  Afterwards she

reported her error to the Commonwealth's Attorney, who recalled Moore to the stand so that she might correct her testimony. Clagett objected to the trial court's permitting Moore to be recalled. We hold that the trial court did not abuse its discretion in permitting the Commonwealth to recall this witness to correct or explain prior testimony. See Quintana, 224 Va. at 142, 295 S.E.2d at 650 (sustaining introduction of evidence in rebuttal phase of case more appropriately introduced as part of case-in-chief); Hargraves v. Commonwealth, 219 Va. 604, 608, 248 S.E.2d 814, 817 (1978)(permitting Commonwealth to reopen case after it rested and court heard defendant's motion to strike Commonwealth's evidence).

Clagett further asserted that the basis for Moore's knowledge of the error impinged upon the attorney-client privilege. Assuming, without deciding, that the communication was one which would be entitled to protection, the privilege is waived where the communication takes place under circumstances such that persons outside the privilege can overhear what is said. See Cook v. Hayden, 183 Va. 203, 224, 31 S.E.2d 625, 633-34 (1944). Nothing in the record indicates that Moore overheard the attorneys' conversation intentionally or surreptitiously. Accordingly, the trial court did not err in permitting Moore to be recalled to the stand.

### D. Corroboration of confession

Clagett moved to strike the charges of robbery and capital murder during the commission of a robbery on the ground that there was no corroborating evidence of the robbery to support the

confession. "When, as here, the commission of the crime has been fully confessed by the accused, only slight corroborative evidence is necessary to establish the corpus delicti." Clozza, 228 Va. at 133, 321 S.E.2d at 279. Here, in addition to Clagett's admission that Holsinger had taken the money from the cash register, the evidence showed that the main entrance to the Inn was locked when it would normally have been open; the rear entrance was open when it would normally have been locked; the cash drawer of the register was open and empty; and the owner and three other persons were found murdered at the scene. These facts provide the necessary corroborative evidence that the crime of robbery had been committed. Accordingly, the trial court did not err in failing to strike the robbery charge.

Clagett further asserted that there was no evidence to corroborate his confessed role as the triggerman. In addressing a similar contention in Roach v. Commonwealth, 251 Va. 324, 468 S.E.2d 98 (1996), we said:

> The Commonwealth need not corroborate an entire confession, but it must corroborate the elements of the corpus delicti. In the present case, the Commonwealth met its burden of corroborating the corpus delicti of capital murder.
>
> The corpus delicti of a homicide consists of "proof of the victim's death from the criminal act or agency of another person."

Id. at 344, 468 S.E.2d at 110 (quoting Swann v. Commonwealth, 247 Va. 222, 236, 441 S.E.2d 195, 205, cert. denied, ___ U.S. ___, 115 S.Ct. 234 (1994)).

As in Roach, the Commonwealth produced evidence that the killings were not accidental or self-inflicted, but were the act

of some criminal agent, and that the confessed triggerman possessed a weapon and ammunition consistent with the type used to commit the murders.  Moreover, the record is totally devoid of any evidence that Holsinger, the only other criminal actor present, was potentially the triggerman.  A defendant's hypothesis negating the Commonwealth's theory of the case must be supported by some evidence in the record and may not arise from the imagination of the defendant or his counsel alone.  See Goins v. Commonwealth, 251 Va. 442, 467, ___ S.E.2d ___, ___ (1996); Graham v. Commonwealth, 250 Va. 79, 85-86, 459 S.E.2d 97, 100 (1995).  Because the Commonwealth sufficiently corroborated the corpus delicti of capital murder and the predicate felony of robbery, the trial court did not err in failing to strike the capital murder charges.

### E. Sufficiency of the evidence

After the return of the verdicts, Clagett moved the trial court to set aside the verdicts as contrary to the law and evidence.  As the evidence already recounted in this opinion shows, Clagett's guilt is not in question when the facts are viewed in a light favorable to the Commonwealth.  The trial court properly denied the motion to set aside the verdicts.

## IX.
## JURY INSTRUCTION ISSUES

### A. Flight

Clagett objected to the Commonwealth's instruction no. 21 relating to flight as evidence of guilt.  The evidence at trial showed that Clagett and Holsinger left Virginia Beach and drove

to North Carolina, disposing of evidence along the way.  Clagett maintained at trial that his voluntary return to Virginia Beach within one day negated evidence of flight.  We disagree.

Flight following the commission of a crime is evidence of guilt, and the jury may be so instructed.  Boykins v. Commonwealth, 210 Va. 309, 313-14, 170 S.E.2d 771, 774 (1969); Carson v. Commonwealth, 188 Va. 398, 408, 49 S.E.2d 704, 708 (1948).  Flight is not limited to physically leaving a jurisdiction for an extended period, but includes the taking of any action, even of short duration, intended to disguise one's identity and distance oneself from the crime.  See Edmondson v. Commonwealth, 248 Va. 388, 390-91, 448 S.E.2d 635, 637 (1994)(use of false name constitutes flight).  Viewed in the light most favorable to the Commonwealth, Clagett's trip to North Carolina, though brief, was taken with the purpose of concealing his identity as the perpetrator, and, thus, constituted flight.  Accordingly, there was no error in giving instruction no. 21.

### B. Circumstantial evidence

Clagett also objected to the denial of his instruction no. A-1, a standard instruction concerning the weight to be given circumstantial evidence.  Assuming, without deciding, that Clagett is correct that the Commonwealth's case, apart from Clagett's confession, rests solely on circumstantial evidence, we hold that other instructions given by the trial court adequately address the standard to be applied to circumstantial evidence.  Howard v. Commonwealth, 210 Va. 674, 679, 173 S.E.2d 829, 833 (1970).

**X.**
**PENALTY PHASE ISSUES**

A. Jury inquiry

During deliberation on the punishment for the non-capital offenses, the jury submitted a two-part question to the trial court asking it to define a life sentence with respect to the effect of parole and asking whether mandatory sentences were served concurrently or consecutively. The trial court responded that the jury should "impose such punishment" it felt the evidence warranted and "not to concern [itself] with what might happen afterwards." Clagett objected, stating that the jury "should be instructed that the [mandatory] sentences have to run consecutively." The trial court's answer to the jury was appropriate. Poyner v. Commonwealth, 229 Va. 401, 418-19, 329 S.E.2d 815, 828, cert. denied, 474 U.S. 865 and 474 U.S 888 (1985). Moreover, "we have consistently rejected efforts to permit jurors to consider a defendant's parole eligibility or ineligibility." Joseph v. Commonwealth, 249 Va. 78, 83-84, 452 S.E.2d 862, 866, cert. denied, ___ U.S. ___ 116 S.Ct. 204 (1995).

Relying on Simmons v. South Carolina, 512 U.S. ___, 114 S.Ct. 2187 (1994), Clagett asserts that the jury should have been instructed regarding parole eligibility. Clagett failed to establish and the record does not show that he was parole ineligible. Therefore, Simmons does not apply. Roach, 251 Va. at 346, 468 S.E.2d at 111.

B. Limitation of cross-examination

The trial court sustained the Commonwealth's objection to

Clagett's attempt to cross-examine the lead investigator concerning Holsinger's remorse for her part in the crime.  As Clagett failed to proffer the testimony he expected to elicit, we will not consider this issue on appeal.  <u>Mackall</u>, 236 Va. at 256-57, 372 S.E.2d at 769.

## XI.
## DOUBLE JEOPARDY SENTENCING ISSUE

Clagett asserts, and the Commonwealth concedes, that he has been impermissibly punished with five death sentences for four homicides.  Such a circumstance presents an unusual case for the application of the double jeopardy doctrine.  Generally, a defendant cannot be placed in jeopardy more than once for a single criminal act.  However, the state may, under one or multiple indictments, charge a defendant using multiple theories concerning the same crime or greater and lesser crimes arising out of the same act or transaction.  In such cases, the prohibition against "multiple prosecution" double jeopardy does not apply so long as the defendant is arraigned and tried in a single proceeding.  <u>See</u> <u>Blythe v. Commonwealth</u>, 222 Va. 722, 725, 284 S.E.2d 796, 797-98 (1981); <u>United States v. Quinones</u>, 906 F.2d 924, 928 (2d Cir. 1990), <u>cert. denied</u>, 498 U.S. 1069 (1991).  When so prosecuted, the accused cannot be subjected to more than one conviction and punishment for each discrete criminal act.  <u>Ohio v. Johnson</u>, 467 U.S. 493, 500 (1984); <u>Blythe</u>, 222 Va. at 725, 284 S.E.2d at 797-98.

In <u>Buchanan v. Commonwealth</u>, 238 Va. 389, 384 S.E.2d 757 (1989), <u>cert. denied</u>, 493 U.S. 1063 (1990), we addressed a case

of "multiple punishment" double jeopardy.  There we held that an excess conviction must be set aside and its related sentence vacated.  Id. at 414-15, 384 S.E.2d at 772-73; see also Williams v. Commonwealth, 248 Va. 528, 547, 450 S.E.2d 365, 377 (1994), cert. denied, ___U.S.___, 115 S.Ct. 2616 (1995); Morris v. Commonwealth, 228 Va. 206, 209, 321 S.E.2d 633, 634-35 (1984).  Although Buchanan dealt with greater and lesser degrees of homicide, we believe that the same rationale should apply to cases where the convictions are for crimes of equal magnitude.

In this case, each of the convictions for capital murder during the commission of a robbery may stand on its own.  The conviction for multiple homicide capital murder, although of equal magnitude, is derivative of the other four.  Accordingly, we will vacate the conviction and the corresponding sentence for that crime.  See Buchanan, 238 Va. at 415, 384 S.E.2d at 773; Brown v. Commonwealth, 222 Va. 111, 116, 279 S.E.2d 142, 145 (1981).

## XII.
## SENTENCE REVIEW

Under Code § 17-110.1(C)(1) and (2), we are required to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor" and "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

Clagett contends that the sentence of death was imposed under the influence of passion, prejudice, or other arbitrary

factor.  In support of his contention, Clagett asserts that "[t]he scarcity of any reliable evidence . . . and the numerous errors made by the trial court . . . dictate that the jury's recommendation be vacated.  The probability of prejudice and emotion taking their toll on the jury was great."  Since we have found no error in the trial court's rulings, we reject this argument.  See Pope v. Commonwealth, 234 Va. 114, 127, 360 S.E.2d 352, 360 (1987), cert. denied, 485 U.S. 1015 (1988); Wise v. Commonwealth, 230 Va. 322, 335, 337 S.E.2d 715, 723 (1985), cert. denied, 475 U.S. 1112 (1986).  Additionally, our independent review of the entire record fails to disclose that the jury's death sentence "was imposed under the influence of passion, prejudice or any other arbitrary factor."  Code § 17-110.1(C)(1).

In conducting the excessiveness and proportionality review, we consider "whether other sentencing bodies in this jurisdiction generally impose the supreme penalty for comparable or similar crimes, considering both the crime and the defendant."  Jenkins v. Commonwealth, 244 Va. 445, 461, 423 S.E.2d 360, 371 (1992), cert. denied, 507 U.S. 1036 (1993).  With this purpose in mind, we have compared the record in this case with the records in other capital murder cases, including those in which imprisonment for life was imposed, to determine whether the death penalty imposed here is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."  Code § 17-110.1(C)(2).

Clagett asserts that his case and background "pale by comparison" with virtually every case referenced in his argument

and that the death sentences recommended by the jury are, thus, disproportionate. Considering the nature of the crime and the evidence presented during the guilt and penalty phases of the trial, we conclude that juries in Virginia customarily impose the death sentence for conduct similar to Clagett's. See Stamper v. Commonwealth, 220 Va. 260, 257 S.E.2d 808 (1979), cert. denied, 445 U.S. 972 (1980)(capital murder/robbery of multiple victims; three death sentences based solely upon future dangerousness predicate); see also Peterson v. Commonwealth, 225 Va. 289, 302 S.E.2d 520, cert. denied, 464 U.S. 865 (1983)(capital murder/robbery; victim shot once in abdomen; death penalty based on future dangerousness); Quintana, 224 Va. 127, 295 S.E.2d 643 (capital murder/robbery; death penalty based on vileness and future dangerousness); Clanton v. Commonwealth, 223 Va. 41, 286 S.E.2d 172 (1982)(capital murder/robbery; death penalty based on vileness and future dangerousness); Turner v. Commonwealth, 221 Va. 513, 273 S.E.2d 36 (1980), cert. denied, 451 U.S. 1011 (1981)(capital murder/robbery; death penalty based on vileness and future dangerousness).

**XIII.**

**CONCLUSION**

Apart from the conviction and sentence for multiple homicide capital murder, we find no error in the rulings of the trial court and no reason to commute the four sentences of death for capital murder during the commission of a robbery. Accordingly, we will vacate the conviction and sentence for multiple homicide capital murder and affirm the remainder of the judgment of the

trial court including each of the four convictions for capital murder during the commission of a robbery and the corresponding death sentences.

Record No. 952162 -- <u>Modified and affirmed, as modified.</u>

Record No. 952163 -- <u>Affirmed</u>.