**Michael D. CLAGETT, Petitioner–Appellant,**

v.

**Ronald ANGELONE, Director of the Virginia Department of Corrections, Respondent–Appellee.**

No. 99–20.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 25, 2000.

Decided April 5, 2000.

**ARGUED:** Patrick Hugh O'Donnell, Norfolk, Virginia; Charles Russell Burke, Virginia Beach, Virginia, for Appellant. Pamela Anne Rumpz, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee. **ON BRIEF:** Mark L. Earley, Attorney General of Virginia, Office of the Attorney General, Richmond, Virginia, for Appellee.

Before WIDENER, LUTTIG, and MICHAEL, Circuit Judges.

Dismissed by published opinion. Judge LUTTIG wrote the opinion, in which Judge WIDENER and Judge MICHAEL joined.

**OPINION**

LUTTIG, Circuit Judge:

A Virginia jury convicted Michael D. Clagett of five counts of capital murder and various other offenses, and returned a verdict of death on each murder count. After appealing his convictions in state court on direct review and in state habeas proceedings, Clagett filed a petition for writ of habeas corpus in federal court. *See* 28 U.S.C. § 2254. The district court dismissed Clagett's petition, and he now appeals that dismissal. Because he has failed to make a substantial showing of the denial of a constitutional right, we deny his application for a certificate of appealability and dismiss his petition for writ of habeas corpus.

I.

The Virginia Supreme Court outlined the facts of the discovery of the crime as follows:

Richard T. Reed, a regular patron, arrived at the Witchduck Inn (the Inn), a tavern and restaurant in Virginia Beach, about midnight on June 30, 1994. Although the Inn usually remained open until 2:00 a.m., Reed found that the front door was locked. Reed could hear music playing inside.

Although he knew that it would normally be kept locked, Reed went to the rear door entrance to the Inn and found it unlocked. Upon entering the Inn, he discovered the bodies of Lam Van Son, the Inn's owner, Inn employees Wendell Parish and Karen Sue Rounds, and Abdelaziz Gren, an Inn patron. Each victim had been shot once in the head. The Inn's cash register was open and empty.

Based upon information supplied by Denise Holsinger, Clagett's girlfriend, Clagett was identified as a suspect in the killings.

*Clagett v. Commonwealth,* 252 Va. 79, 472 S.E.2d 263, 266 (Va.1996).

On July 1, 1994, Police Officer Donna Malcolm, responding to a citizen call reporting that a man was "sleeping in the bushes," J.A. 27, found Clagett "passed out" in bushes outside an apartment building at which he did not reside. J.A. 440. At that time, approximately 11:33 p.m., Officer Malcolm noticed that Clagett smelled of alcohol, was "a little bit unsteady on his feet," and had bloodshot eyes. J.A. 36. She arrested Clagett for public intoxication, he was taken into custody, and he was read his *Miranda* rights.

At the police station, Clagett was turned over to Detective Paul C. Yoakum. Detective Yoakum began interviewing Clagett at 12:13 a.m. on July 2, 1994. At this point Detective Yoakum noticed that Clagett had bloodshot eyes, but Clagett's speech was not slurred and he did not appear to have

difficulty walking. Clagett informed Detective Yoakum that he had only slept one hour in the previous forty-eight hours. Detective Yoakum could smell alcohol on Clagett's person, although he said that "[h]is body odor was stronger than the smell of alcohol on him."

In the initial minutes of the two and a half hour interview with Detective Yoakum, Clagett denied that he had been at the Witchduck Inn on the night of the killings. He continued to deny that he had been at the Inn after Detective Yoakum falsely told him that Navy men had identified Clagett from a photo spread. However, having been told, truthfully, that Holsinger had talked to the police about him, Clagett began to refer to Holsinger as "little miss innocent" and commented that she was probably going to "walk away" from the crimes after having pointed the finger at him. Detective Yoakum then, in a ruse, told Clagett that the Inn had security cameras and that the police could place him at the Inn on the night of the murders.

Immediately after Detective Yoakum told Clagett about the security cameras, Clagett repeated his request for a cigarette, and the Detective left the room to find cigarettes for Clagett. When the Detective returned and before he asked another question of Clagett, Clagett confessed to the killings:

> You can fry me. Thats (sic) what I'm going to ask for when we go to court. Fry me, I'm not gonna live. I don't want the tax payers supporting me. I did it. Yeah I did it. I did it all. All by my f* * *ing self. Let that little c* * * go free. I did it all. I did it all buddy. And the worst thing was ... Lam[, the bar owner,] was my buddy. . . .

J.A. 162 (Taped Interview of Clagett, at 8).

Clagett then explained to Detective Yoakum that he planned the robbery at the request of Holsinger, and that while Holsinger took $400 from the cash register, he used a .357 Magnum to murder the four individuals. He also described how and where he shot each of the victims, explaining that he shot one victim in the forehead and the other three victims in the back of the head.

The same day that Clagett confessed to Detective Yoakum and while he was still in police custody, he confessed a second time to the killings, but this time to a television news reporter. A reporter from WTKR Channel 3 asked Clagett "Are you guilty of these charges?" And Clagett replied: "Yes. I shot every one of them." J.A. 226–27.

A grand jury returned two indictments against Clagett on October 3, 1994: one charging him with robbery, use of a firearm in the commission of a robbery, four counts of capital murder during the commission of a robbery, and four counts of use of a firearm in the commission of a murder; and the other indictment charging him with one count of multiple homicide capital murder for killing all four individuals as part of the same act or transaction.

On December 12, 1995, the Virginia Beach Circuit Court held a hearing on Clagett's motion to suppress his videotaped confession to Detective Yoakum. There were four grounds for the motion to suppress: lack of probable cause for the arrest for public intoxication; Clagett's assertion of his right to counsel during the course of the police interrogation; the use of misrepresentations by police to overbear Clagett's will; and the pretextual nature of the arrest for public intoxication. The court denied the motion to suppress, finding that there was probable cause for the arrest, that Clagett had not asserted his rights to counsel and to remain silent, that Clagett's will was not unlawfully overborne by police misrepresentations, and that the arrest for public intoxication was not pretextual.

During the jury trial which spanned ten days, the prosecution presented, in addition to the two videotaped confessions, the

following evidence. Clagett and Holsinger were seen with a gun on the day of the killings. Police found a .357 Magnum in Clagett's home on the morning of July 2, but a crime laboratory analyst was unable to match bullet fragments from the Inn with the gun found in Clagett's home. A medical examiner testified that only one victim was not shot in the back of the head. After the killings, the cash register at the Inn was empty. And when Clagett was arrested, he had $137.00 on his person. Holsinger did not testify at trial.

The jury convicted Clagett of all charges in the two indictments.

A sentencing hearing was held on July 12 and 13, 1995. During the hearing, the jury heard evidence that Clagett had a history of brutal domestic violence against his former wife and of drug use, but that he showed great remorse for the murders during his confession to Detective Yoakum.

During deliberation on sentencing for the non-capital charges, the jury requested further instruction on two issues:

(1) What does "life imprisonment" mean in the law as relates to parole?

(2) Are the standing mandatory sentences to be served? concurrently? consecutively?

J.A. 235 (note from jury to court). The court instructed the jury as follows:

The Court instructs the jury that you should impose such punishment as you feel is just under the evidence and within the instructions of the court. You are not to concern yourselves with what may happen afterwards.

J.A. 234. The jury returned a verdict of five death sentences in the capital charges on findings of future dangerousness and vileness, and sentenced Clagett to forty-three years of imprisonment on the non-capital charges. The trial court entered judgment on the jury verdict.

The Virginia Supreme Court affirmed the individual capital murder convictions and corresponding death sentences, but set aside the fifth conviction for multiple homicide capital murder on double jeopardy grounds. *Clagett,* 472 S.E.2d at 272–73. The United States Supreme Court denied Clagett's petition for writ of certiorari. *See Clagett v. Virginia,* 519 U.S. 1122, 117 S.Ct. 972, 136 L.Ed.2d 856 (1997). Represented by new counsel, Clagett then sought state habeas relief in the Virginia Supreme Court on April 18, 1997, and on December 15, 1997, the petition was dismissed.

The Circuit Court of Virginia Beach set Clagett's date of execution for April 28, 1998.

Clagett then filed his federal habeas petition in the Eastern District of Virginia, along with a motion for appointment of counsel and a petition for stay of execution. On April 24, 1998, the district court granted Clagett's petition for stay of execution and his motion for appointment of counsel. On July 13, 1998, Clagett filed his formal federal habeas petition. United States Magistrate Judge Miller thereafter filed a report and recommendation that all of Clagett's claims be denied.

The state filed a motion to dismiss and the district court, adopting the magistrate's recommendation, dismissed the petition. Clagett sought reconsideration, but his motion was denied. Clagett now appeals.

In the present appeal of the district court's dismissal of his federal habeas petition, Clagett argues: (1) that the trial court erred in not instructing the jury regarding his parole ineligibility; (2) that his post-arrest confession to Detective Yoakum was involuntary, and (3) that he was incapable of understanding his *Miranda* warnings because of a combination of sleep deprivation, alcohol and/or drug use, and deception by Detective Yoakum during the interrogation; and (4) that his trial counsel was ineffective for failing to object to the admission of the confession to Detective Yoakum for the reasons articulated in (2) and (3). We address each claim below.

## II.

Because Clagett filed his federal habeas petition after the effective date of the Anti-terrorism and Effective Death Penalty Act's ("AEDPA") enactment, the AEDPA amendments apply to Clagett's petition. *See Mueller v. Angelone,* 181 F.3d 557, 565–69 (4th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 37, 144 L.Ed.2d 839 (1999).

In the present case, Clagett's claim that the trial court erred by not instructing the jury on his parole eligibility was adjudicated on the merits by the Virginia Supreme Court. *See Clagett,* 472 S.E.2d at 272. Therefore, under the AEDPA, we are not permitted to grant habeas relief unless the state adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).[1]

During its sentencing deliberation on Clagett's non-capital convictions, the jury asked the trial court in part "what does life imprisonment mean in the law as it relates to parole?" J.A. 235. The trial court responded that the jury should "impose such punishment as [it felt was] just under the evidence" and "not to concern [itself] with what might happen afterwards." J.A. 234. Clagett objected that the jury "should be instructed that the sentences run consecutively." J.A. 232.

■ Clagett argues before us that the trial court erred when it did not provide the jury with a *"Simmons* instruction," after the jury asked for clarification regarding parole. In *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), a plurality of the Supreme Court held that where "the jury reasonably may have believed that petitioner could be released on parole if he were not executed" because the trial court refused to permit the defendant "to provide the jury with accurate information regarding petitioner's parole *ineligibility,"* and the state argued "that petitioner would pose a future danger to society if he were not executed," the state denied the petitioner due process. *Id.* at 161–62, 114 S.Ct. 2187; *see also Townes v. Murray,* 68 F.3d 840, 851 (4th Cir.1995) (explaining that *Simmons* holds "only that, when the state puts a capital defendant's future dangerousness in issue, the trial court may not both refuse a defendant's request that it instruct the jury on his parole ineligibility and prevent defendant from arguing that same point to the jury"), *cert. denied,* 516 U.S. 1100, 116 S.Ct. 831, 133 L.Ed.2d 830 (1996). Therefore, Clagett presumably wished the jury to be instructed that he was ineligible for parole.[2] Clagett also

1. The Supreme Court heard argument this Term in *Williams v. Taylor,* No. 98–8384, 1999 WL 813784 (1999) (transcript of argument), a Fourth Circuit case in which the interpretation of section 2254(d)(1) is at issue, and the opinion in *Williams* is still pending. We apply the interpretation of section 2254(d)(1) adopted in both *Williams v. Taylor,* 163 F.3d 860 (4th Cir.1998), *cert. granted,* —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999), and *Green v. French,* 143 F.3d 865, 870 (4th Cir.1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999) ("If a state court decision is in square conflict with a precedent (supreme court) which is controlling as to law and fact, then the writ ... should issue; if no such controlling decision exists, the writ should issue only if the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the rele-

vant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts."). But even if we were reviewing Clagett's claims under a *de novo* standard, we would reach the same conclusions.

2. *Simmons* does not require that a jury be instructed on the effects of parole for a parole-eligible defendant. *See Wilson v. Greene,* 155 F.3d 396, 407–08 (4th Cir.1998) ("[*Simmons* ] does not entitle a defendant to an instruction about when they would become *eligible* for parole." (emphasis added)). To the extent Clagett is arguing that the jury should have been given a *Simmons* instruction regarding his parole *eligibility, see* Appellant's Br. at 22 ("[T]he correct instruction to the jury following their inquiry would have been to instruct them that Clagett would not be eligible for parole, ... or at best, may be

now argues that he was parole *ineligible* under Virginia's three-strikes provision, *see* Va.Code § 53.1–151(B1) ("Any person convicted of three separate felony offenses ... when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole."), because his four murders were not part of a common act.

■ The question before this court is whether Clagett was parole ineligible. If he was not parole ineligible, then a *Simmons* instruction was not required and the trial court did not err when it refused to provide such an instruction. The Virginia Supreme Court on direct review held that *Simmons* was inapplicable because "Clagett failed to establish and the record does not show that he was parole ineligible." *Clagett,* 472 S.E.2d at 272. The district court held that the Virginia Supreme Court's finding that Clagett failed to establish that he was parole ineligible was not an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)(2). As the district court explained, "[w]hile [Clagett] was convicted of over three separate felony offenses of murder, it is not unreasonable to conclude that the murders were ... 'part of a common act, transaction or scheme.' "

We agree with the district court that the Virginia Supreme Court's finding that Clagett was not parole ineligible was not unreasonable. Under Virginia's three-strikes provision, felony offenses that were "part of a common act, transaction or scheme" do not count as separate felony offenses. Va.Code § 53.1–151(B1). Clagett does not even attempt to articulate how his murder of four individuals on the same night within minutes of each other, in the same bar, during the same robbery, with the same gun and the same accomplice, could be anything but "part of a common act, trans-

action or scheme." And, given the Virginia Supreme Court's decision in *Fitzgerald v. Commonwealth,* 249 Va. 299, 455 S.E.2d 506 (Va.1995), Clagett's murders were clearly part of a common act. In *Fitzgerald,* the defendant had kidnapped a girl, then robbed and murdered her father, driven the girl to the woods and raped her, then taken a taxi cab to a second woman's home after killing the taxi cab driver, and had kidnapped and raped the second woman after having taken her to a hotel. The Virginia Supreme Court held that all of those crimes, although committed in different places and over the course of many hours, were part of a common act for purposes of the three-strikes provision.

We recognize that the United States Supreme Court has granted a writ of certiorari in another Virginia capital case involving the *Simmons* instruction, *see Ramdass v. Angelone,* 187 F.3d 396 (4th Cir.1999), *cert. granted in part,* —— U.S. ——, 120 S.Ct. 784, 145 L.Ed.2d 659 (2000). However, we are satisfied that the disposition in that case will not alter our conclusion here. In *Ramdass,* at the time the jury was deliberating in the sentencing phase of his capital conviction for murder, Ramdass had been convicted of and sentenced for one armed robbery. And, a jury had returned a verdict finding Ramdass guilty in a second armed robbery, but the court had not yet entered judgment in that case. The trial court did not instruct the jury as to Ramdass's parole ineligibility under Virginia's three-strikes provision.

On remand from the Supreme Court after its decision in *Simmons,* the Virginia Supreme Court held that although the first armed robbery, and the murder conviction (which was the subject of the appeal), were both predicate offenses for the three-strikes provision, the second armed rob-

---

eligible for parole only after serving thirty years ....."), such an extension of *Simmons* would constitute a new rule not applicable to his case. We also could not say that the Virginia Supreme Court's decision that a *Simmons* instruction is not required when the

defendant is parole eligible was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

bery verdict for which no judgment had yet been entered was not a "conviction" under Virginia law and the three-strikes provision. Therefore, at the time the *Simmons*-type instruction was requested during jury deliberation on sentencing for the murder conviction, Ramdass was not parole ineligible under Virginia law.

In federal habeas proceedings in this court, Ramdass argued that this court should reject Virginia's technical determination of parole ineligibility and adopt a pragmatic, common sense determination of parole ineligibility for purposes of invoking the *Simmons* instruction. *See* 187 F.3d at 405. This court, however, refused to adopt a functional determination of parole ineligibility and deferred to the state law understanding of parole ineligibility. *See id.* ("When Ramdass argues that *Simmons'* applicability is not conditioned on 'a state's determination of "parole ineligibility" at the moment of capital sentencing' but rather on a nonlegalistic 'common-sense [im]possibility of parole,' he advances a new interpretation of *Simmons* that is simply incompatible with the logic of *Simmons* itself."). Additionally, this court held that "parole eligibility is a question of state law and therefore is not cognizable on federal habeas review." *Id.* at 407.

The Supreme Court, then, will be reviewing two aspects of the *Ramdass* decision: "Does the rule in *Simmons* turn on the actual operation of state law, or on its hypertechnical terms; and must a federal habeas court adjudicating a *Simmons* claim make its own analysis of the functional consequences of state law, or is it bound by the state courts' characterization of state law for federal constitutional purposes?" On the first question, in Clagett's case, there is no "hyper-technical" inter-

pretation of the three-strikes provision, and Clagett makes no argument in this federal habeas proceeding that any reading of Virginia parole law would have made him technically eligible but functionally ineligible for parole at the time the jury was deliberating in the sentencing phase of his non-capital charges.[3]

Likewise, as to the second question, whether this court can conduct its own analysis of the functional consequences of state law, or is bound by the state court's characterization of state law, Clagett has not articulated how a federal court determination of the functional consequences of Virginia state law could diverge in this case from the state courts' characterization of that same state law. We are confident that even if the Supreme Court were to hold that we must undertake our own analysis of the functional consequences of state law, Clagett's claim that he was parole ineligible would fail. As explained above, Clagett's murder of the four people at the Witchduck Inn was clearly a common act or transaction under Virginia's three-strikes provision, particularly in light of *Fitzgerald.*

Therefore, the Virginia Supreme Court did not err in finding that Clagett failed to show he was parole ineligible and thus in holding that a *Simmons* instruction was unnecessary. We do not believe that Clagett could, under any level of independent federal review, make a colorable claim that his murders were not part of a common act. Because Clagett was parole eligible, no *Simmons* instruction was required.

### III.

We now turn to Clagett's claims that his post-arrest confession to Detective Yoa-

---

**3.** For instance, he does not argue that functionally, the forty-three years of imprisonment for the non-capital crimes in conjunction with life imprisonment (even if parole were technically allowed) would keep him behind bars for the rest of his life. And, even if he had, certainly such an argument based on actuarial tables is neither based on the "actual oper-

ation of state law" nor based on a "hypertechnical" interpretation thereof. Ramdass did not even argue that one should look beyond state law on parole ineligibility altogether to determine whether "in reality" a prisoner would never live long enough to enjoy the possibility of parole.

kum was involuntary and that he was incapable of understanding his *Miranda* warnings because of a combination of sleep deprivation, alcohol and/or drug use, and deception by the Detective during his interview of Clagett.

 Under 28 U.S.C. § 2254(b), a federal petitioner must generally exhaust his claims in state court before bringing them to federal court in a habeas petition. *See Matthews v. Evatt,* 105 F.3d 907, 910–11 (4th Cir.), *cert. denied,* 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997). If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts. *See Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Clagett does not expressly acknowledge that his claims regarding his confession to Detective Yoakum were never exhausted in the state courts and would now be procedurally barred if brought there. The district court found that these claims were never raised in state court because, although Clagett litigated the admissibility of his confession prior to trial and raised the issue on direct appeal, he did so on grounds other than those asserted in federal court. J.A. 454–61 (district court opinion). The district court explained that, on direct appeal, Clagett challenged his statement on the ground that because his arrest was allegedly pretextual, his subsequent statement was inadmissible; and that Clagett did not raise the involuntariness, unknowing waiver claims in his state habeas petition either. The question for us is (A) whether the claims regarding the confession were exhausted and if not, whether they would now be procedurally barred if brought in state court, and (B) if

they would be, whether there is cause for the default and actual prejudice.

The district court did not err in finding that the involuntariness, unknowing waiver claims were never exhausted in state court. Although Clagett correctly argues that his counsel objected to the admissibility of his confession during trial and on direct appeal, the grounds he asserted to support suppression of the confession were different than those grounds that he advances today.[4] And, on direct appeal he challenged the admissibility of his confession to Detective Yoakum solely on the ground that there was no probable cause for the pretextual public intoxication arrest. J.A. 256–57 (Clagett's Va. S.Ct. Br. on direct review, at 15–16); *Clagett,* 472 S.E.2d at 268. In fact, Clagett cites trial counsel's failure to make such claims as evidence of his trial counsel's ineffective assistance. *See* Appellant's Br. at 18. Additionally, Clagett concedes that he "did not raise the issue of admissibility of his confession to police in his state habeas corpus petition." *Id.* at 10; *see also* J.A. 314–50 (Clagett's Va. S.Ct. Br. in state habeas).

 If those non-exhausted claims were brought in Virginia court today, they would be procedurally defaulted. Under Virginia law, claims that are not presented at trial generally cannot be presented on direct appeal. *See Coppola v. Warden of Virginia State Penitentiary,* 222 Va. 369, 282 S.E.2d 10 (Va.1981), *cert. denied,* 455 U.S. 927, 102 S.Ct. 1291, 71 L.Ed.2d 471 (1982). And, if claims are not raised on direct appeal, they generally cannot be raised in state habeas proceedings unless petitioner also raises an ineffective assistance of counsel claim in the habeas proceedings. *See Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (Va.1974), *cert. de-*

---

4. As stated above, in Clagett's initial motion to suppress before trial, he alleged four independent grounds for suppression: lack of probable cause, assertion of his right to counsel during the interview, unlawful overbearing by the police through use of misrepresen-

tations during the interview, and pretextual arrest. Clagett initially advanced the police misrepresentations argument as an independent grounds for suppression, but he did not renew the argument during the suppression hearing or on direct appeal.

*nied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975); *Walker v. Mitchell,* 224 Va. 568, 299 S.E.2d 698, 699 (Va.1983). Moreover, claims not raised in an initial state habeas petition cannot generally be raised in subsequent state habeas petitions. Va.Code § 8.01–654(B)(2) ("No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition."). Because Clagett did not raise the particular suppression claims he raises now during trial, on direct appeal, or in his state habeas petition, these claims would be barred under at least three independent state procedural rules.

■■ Federal habeas review of a state prisoner's claims that would be procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice.[5] *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A prisoner can demonstrate cause for procedural default by

proving that he was deprived of constitutionally effective assistance of counsel. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). However, if counsel performs at a constitutionally acceptable level, then counsel's performance cannot constitute cause for procedural default. *Id.* at 486–88, 106 S.Ct. 2639.

Clagett does raise an ineffective assistance of trial counsel claim in his federal habeas petition—that counsel was ineffective for not objecting to the admissibility of the confession on involuntariness and unknowing waiver grounds. However, he appears to raise the claim as an independent ground for habeas relief and not as cause for the procedural default of his claims challenging the admission of the confession to Detective Yoakum. Nonetheless, the district court addressed the ineffective assistance claim as a potential ground for cause. Although we recognize that Clagett does not label his ineffective assistance claim as establishing cause for his procedural default, we too address the ineffective assistance claim as if Clagett had argued that it did supply the cause to excuse the procedural default.[6]

---

**5.** Clagett does not argue that failure to consider the claims will result in a fundamental miscarriage of justice, and we do not find that there would be a fundamental miscarriage of justice.

**6.** The government makes the additional argument that because Clagett did not raise in state court the same ineffective assistance of trial counsel claim that he raises now, J.A. 361–64, the ineffective assistance claim itself is procedurally defaulted and cannot constitute cause. It is true that this court has held that "[g]enerally, 'a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' *Murray* [v. *Carrier,* 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)]; *see Pruett v. Thompson,* 996 F.2d 1560, 1570 (4th Cir.1993). This is so, because allowing a petitioner to raise a claim of ineffective assistance of counsel for the first time on federal habeas review in order to show cause for a procedural default would place the federal habeas court 'in the anomalous position of

adjudicating an unexhausted constitutional claim for which state court review might still be available' in contravention of '[t]he principle of comity that underlies the exhaustion doctrine.' *Murray,* 477 U.S. at 489, 106 S.Ct. 2639." *Mackall v. Angelone,* 131 F.3d 442, 446 n. 9 (4th Cir.1998) (en banc), *cert. denied,* 522 U.S. 1100, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998).

However, the question in this case would be whether a claim of ineffective assistance that was not exhausted *but would now be procedurally barred if brought in state court* may constitute cause. In *Justus v. Murray,* 897 F.2d 709 (4th Cir.1990), we further said that *"Murray* [v. *Carrier* ] stands for the proposition that before an ineffective assistance of counsel claim may be raised as cause in federal habeas, it must first be exhausted in state court *and not be procedurally defaulted.* Any other reading of *Murray* eviscerates *Wainwright." Id.* at 714. However, we recognize that the Supreme Court will hear argument this Term in *Carpenter v. Mohr,* 163 F.3d 938 (6th Cir.),*cert. granted,* —— U.S. ——, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999), on the question

First we recognize that in order to establish a claim of ineffective assistance that can serve as cause to excuse procedural default, Clagett must satisfy the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, Clagett must demonstrate that his counsel's performance fell below an objective standard of reasonableness, *see id.* at 687–88, 104 S.Ct. 2052, and establish actual prejudice, *see id.* at 693–94, 104 S.Ct. 2052.

The district court held that trial counsel's performance did not fall below the standard of objective reasonableness. The district court explained that although trial counsel should have recognized that the pretextual arrest argument was "meritless on its face" given the circumstances under which Clagett was found "passed out" in the bushes, counsel's decision to pursue the pretextual arrest argument was not objectively unreasonable. J.A. 457–59. This was because, according to the district court, trial counsel "pursued a strategy that they may have hoped would preclude admission of both the Yoakum and the Channel 3 confessions: had the arrest of Clagett been found unlawful, counsel may have argued that all subsequent information resulting from the arrest was fruit of the poisonous tree." J.A. 458–59 (district court opinion). The district court also found that there was no prejudice, given the existence of the WTKR Channel 3 confession. J.A. 460 (district court opinion) ("Even had trial counsel succeeded in persuading the court to suppress the videotaped interview with Detective Yoakum, the WTKR interview tape shown to the jury was its substantive equal. Petitioner clearly announced, voluntarily, and to a non-state party, that he killed four individuals at the Witchduck Inn.").

Before evaluating whether trial counsel's performance fell below an objective standard of reasonableness, we recognize that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. We must not permit hindsight to distort our assessment of counsel's performance, and we must appreciate that counsel may choose a trial strategy from within a wide range of acceptable strategies. *See id.* With this highly deferential standard of trial counsel's performance in mind, we are satisfied that trial counsel chose a strategy for suppressing Clagett's confession to Detective Yoakum—that the confession was obtained while Clagett was unlawfully in custody pursuant to a pretextual arrest—that did not fall below an objective standard of reasonableness. Before Officer Malcolm encountered Clagett, she had been notified that the police were searching for him in connection with the Witchduck Inn homicides. Officer Malcolm testified that when she responded to the call regarding Clagett, it was not a "suspicious-person" call, but rather an "assist-rescue" call for medical reasons. J.A. 29. Clagett was not unconscious but was merely sleeping, J.A. 59, and he was able to identify himself and responded to Officer Malcolm's orders. J.A. 31. Officer Malcolm did not know that Clagett did not reside at the apartment building outside of which Clagett was found; he was found near bushes next to a patio outside an apartment. J.A. 36. Officer Malcolm did not ask Clagett whether he lived in the adjacent apartment. J.A. 38–39. Although he was found asleep in the bushes and smelled of alcohol, he was not unconscious, and his bloodshot eyes and slight unsteadiness could have been as consistent with sleep deprivation as with intoxication. Finally, once at the police station, Officer

"[w]hether a federal habeas court is barred from considering an ineffective-assistance-of-counsel claim as 'cause' for the procedural default of another habeas claim when the ineffective-assistance claim is itself procedurally defaulted." Because we hold that there was no ineffective assistance of counsel that can serve as cause to excuse Clagett's procedural defaults, we do not need to address the question whether the ineffective assistance of counsel claim could serve as cause despite it having been procedurally defaulted itself.

Malcolm did not charge Clagett for public intoxication. In light of these facts known to Clagett's trial counsel at the time, we conclude that counsel's strategy of arguing that the public intoxication arrest was pretextual did not fall below an objective standard of reasonableness.

Clagett makes two arguments contesting the district court's finding that his trial counsel's performance was not objectively unreasonable. First Clagett argues that the district court provided no reason for why trial counsel chose *between* the pretextual arrest and the involuntariness, unknowing waiver claims, and that they were not mutually exclusive. *See* Appellant's Br. at 19. However, the potential for conflict between the two claims is quite obvious. Clagett now points to the "facts" that he was found asleep in bushes, appeared to be intoxicated, and smelled of alcohol when he was arrested for public intoxication, *see id.* at 11, as evidence of why Detective Yoakum should have known Clagett was too drunk to understand his *Miranda* warnings. However, in arguing that the arrest for public intoxication was pretextual, trial counsel contested the facts of Clagett's public intoxication. *See, e.g.,* J.A. 64–65 (trial counsel pressing Officer Malcolm on what "specific signs of intoxication" she noted about him when she first saw him); J.A. 65 (trial counsel asking Officer Malcolm whether Clagett's speech was slurred); J.A. 116–118 (trial counsel asking Detective Yoakum whether he noticed how Clagett smelled, was walking, and talking; whether he "satisfied [himself] at least that he was not ... too intoxicated to give a statement .... or to understand his rights"; and whether he believed the sleep deprivation Clagett claimed accounted for Clagett's bloodshot eyes). That Clagett now wants to rely on the facts suggesting that he was intoxicated instead of Detective Yoakum's testimony that Clagett appeared to be sober amply highlights the tension between the two strategies.

Second, Clagett argues that a "fruit of the poisonous tree" analysis would apply both to the pretextual arrest argument that trial counsel did make and to the involuntary confession, unknowing waiver argument that trial counsel should have made. According to Clagett, "but for the involuntariness of the first confession pulled from Clagett there would have not been a second Channel 3 TV confession." Appellant's Br. at 19. And, Clagett relies on *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), to argue that, because the first confession to police provided the details for and made credible the second confession to Channel 3, the second confession was tainted by the constitutional violations associated with the first confession.

As stated above, the relevant inquiry in conducting the ineffective assistance of counsel analysis is whether trial counsel's performance fell below an objective standard of reasonableness, not whether trial counsel chose the best of all possible strategies. But, even if we were to engage in hindsight in weighing the trial strategy chosen against the trial strategy defendant now wishes had been chosen, the arguments for "taint" are as strong if not stronger for the trial strategy chosen—the pretextual arrest argument—as for the one not chosen. Under the pretextual arrest theory, trial counsel could argue that, because Clagett was unlawfully in custody, any confessions to anyone while he was still in custody were fruit of the poisonous tree. However, to make the same taint argument under Clagett's new involuntary confession theory, trial counsel would have to connect directly the first confession to the second confession, because he was being lawfully held in police custody when Channel 3 interviewed him. Clagett has not identified any evidence to suggest that the Channel 3 interview was tainted by the first confession, and the record before us contains none. *See Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■ Not only has Clagett failed to show how his new suppression strategy for trial is even equal to the one chosen by trial counsel, but the taint argument itself is meritless under either strategy for suppressing the confession. First, although a second confession to police following a previous involuntary confession to police is subject to a taint analysis, *see Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), Clagett points to nothing in the record of his case that would suggest that any taint was not dissipated by the time he voluntarily answered the question of the non-state party reporter.

Second, Clagett misreads *Fulminante* as a case in which an involuntary confession to a police informant tainted a later confession to a non-state actor. To the contrary, the relevant discussion in *Fulminante* regarding the connection between the first involuntary confession and the second voluntary confession appeared in the Supreme Court's harmless error analysis, not in a "taint" analysis. There was a significant amount of time between the two confessions and they were made to two different people—the first to a jailhouse informant and the second to the informant's girlfriend. Having decided that the first confession should have been suppressed because the defendant believed his life was in danger if he did not confess, the Court undertook harmless error analysis and held the error was not harmless because: (1) there was so little physical evidence that both confessions were necessary for the conviction; (2) the girlfriend was not an independently credible witness and so the first confession was needed to make the second confession more credible; (3) the admission of the first confession, because it included references to organized crime, permitted the prosecution to submit damaging evidence about organized crime; and (4) the first confession influenced sentencing as well.

■ Because trial counsel's performance at trial did not fall below an objectively reasonable standard, trial counsel's performance did not constitute constitutionally ineffective assistance of counsel. Therefore, counsel's performance cannot serve as cause to excuse Clagett's default of the claims relating to his confession to Detective Yoakum, which he has raised for the first time in these federal habeas proceedings. Even if we were to address the merits, despite Clagett's failure to exhaust them in state court and their certain procedural default if they were brought in state court today, we would not conclude that the trial court erred in not suppressing Clagett's confession to Detective Yoakum. Under the totality of circumstances, Clagett appeared to the Detective not to be intoxicated; Clagett did not slur his speech or have trouble walking at the time of the single-officer interview, despite his claimed lack of sleep and alcohol use; and Clagett continued to deny his presence at the Inn after being told the first falsehood by the Detective, suggesting that he was not as vulnerable to the ruses as Clagett now contends.

■ Finally, even if we did believe that the first confession was involuntary or that Clagett was incapable of understanding his *Miranda* rights, we agree with the district court that the Channel 3 confession was the substantive equal to the first confession, and provided the jury with an independently credible confession upon which to base its conviction of Clagett.

IV.

As explained above, Clagett raises his ineffective assistance of trial counsel claim as an independent basis for granting the writ of habeas corpus. However, because we have already rejected Clagett's claim that his trial counsel was ineffective for failing to object to the admission of the videotaped confession to Detective Yoakum on the grounds that his confession was involuntary and he did not knowingly waive his *Miranda* rights, we reject Clagett's independent ineffective assistance claim as well.

Additionally, because we reject the ineffective assistance of trial counsel claim on its merits, we do not also address whether Clagett has shown cause for his failure to exhaust the claim in state court and for its certain procedural default if brought now.

## V.

For the foregoing reasons, Clagett has failed to make a substantial showing of the violation of a constitutional right. Therefore, his application for a certificate of appealability is denied and his petition for writ of habeas corpus is dismissed.

*DISMISSED*