IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,     )    CASE NO. ST-2018-CR-00037
)
                Plaintiff,     )
    vs.                    )
)
TREVORNE LAKE,               )
                Defendant.     )
)

Cite as: 2021 VI Super U103

**MEMORANDUM OPINION**

¶1     This matter is before the Court on Defendant's Motion to Suppress, filed on April 16, 2021.[1] Also before the Court is the People's Motion to Strike the Defendant's Untimely Motion and Opposition to the Defendant's Motion to Suppress Defendant's Post-*Miranda* Statement, filed on May 14, 2021.

¶2     This motion to suppress came on for hearing on June 24, 2021. The People were represented by Assistant Attorneys General H. Timothy Perry and Ziska Anderson. Defendant Trevorne Lake appeared and was represented by Assistant Public Defender Mary Ann Matney. Defendant Lake seeks to suppress statements he made during a police interrogation.

¶3     Lake argues that statements he made on May 26, 2017, were obtained in violation of his Fifth and Sixth Amendment rights. The People reject that argument,

---

[1] The motion is fully briefed.

but they also argue that Lake's motion to suppress is untimely, such that the Court should not consider it on its merits. For the reasons set forth herein, both motions will be denied.

## BACKGROUND AND PROCEDURAL POSTURE

¶4 At the suppression hearing, the People called one witness, Virgin Islands Police Department ("VIPD") Detective Cherese Thomas.[2] The Defendant called two witnesses: now-retired VIPD Detective Albion George[3] and VIPD Sergeant Mario Stout. [4] The following exhibits were entered into evidence: a *subpoena ad testificandum* for Lake, Lake's Advice of Rights Form and Waiver, Lake's statement to VIPD and the VIPD supplement report.

¶5 Lake argues that he was in custody at the time that his statement was made, that his statement was not given freely, that VIPD used the *subpoena ad testificandum* for the purposes of coercing him into making a statement, and that his *Miranda* rights were violated. As such, Lake argues that his statements should be suppressed.

---

[2] At all times material to the underlying events from May 2017, Detective Thomas was an officer with VIPD. She has since been promoted to detective. Therefore, the Court will state her rank as relevant to the time in question, using "officer" for the events in May 2017, and "detective" when referring to her testimony from the June 24, 2021, suppression hearing.

[3] Detective George's last position with VIPD was as homicide investigator.

[4] At all times material to the underlying events from May 2017, Sergeant Stout was a corporal with VIPD. He has since been promoted to sergeant. Therefore, the Court will state his rank as relevant to the time in question, using "corporal" for the events in May 2017, and "sergeant" when referring to his testimony from the June 24, 2021, suppression hearing.

¶6     The People concede that Lake was in custody at the time his statement was made but argue that Lake was fully advised of his *Miranda* rights prior to giving his statement, that he knowingly, voluntarily, and intelligently waived those rights, and that he made an uncoerced choice to provide a statement to VIPD. The People also object to Lake's motion to suppress on the grounds of untimeliness.

## FACTS

The Court finds the following facts from the suppression hearing.

¶7     On May 16, 2017, Alldix Callwood (hereinafter "Callwood") was shot and killed in a drive-by shooting in Smith Bay, St. Thomas, U.S. Virgin Islands. Later that day, Lake became a person of interest in the investigation of Callwood's murder, and VIPD officers issued a "Be On The Look Out" for Lake.

¶8     On May 24, 2017, the V.I. Department of Justice issued a *subpoena ad testificandum* for Trevorne Lake, which ordered "his personal appearance before the . . . Attorney General of the U.S. Virgin Islands . . . to give testimony in connection with a criminal investigation . . ." It also "commanded" Lake "to appear before the Homicide Task Force of the Virgin Islands Police Department to give testimony in connection with an ongoing investigation . . ." On May 26, 2017, U.S. Customs and Border Protection ("CBP") agents alerted VIPD that Lake was at the Cyril E. King Airport on St. Thomas, U.S. Virgin Islands, attempting to leave the island to travel to Florida. CBP held Lake until Officer Thomas and Corporal Stout arrived at the airport. As a result of his detention, Lake missed his flight to Florida.

¶9    Officer Thomas and Corporal Stout told Lake they had a subpoena for him. The officers then transported Lake to the High Intensity Drug Trafficking Agency ("HIDTA") Task Force office, located in Subbase close to the airport, for questioning. Lake agreed to go with the officers. Officer Thomas and Corporal Stout did not converse with Lake during the ride from the airport to the HIDTA office, nor did Lake make any statement before being advised of his rights.

¶10   After arriving at the HIDTA office, Officer Thomas and Corporal Stout escorted Lake into a room and Detective Albion George joined them. A total of five law enforcement personnel, including one ATF agent, were present for the interrogation. The room was large and airconditioned, and the table was large enough to accommodate all those present. Lake was served with the *subpoena ad testificandum* after arriving at the HIDTA office. The law enforcement personnel wore plain clothes, and they were all armed, but they did not display their weapons, nor did they block the exits in the room.

¶11   After serving Lake with the *subpoena ad testificandum*, Detective George provided Lake with VIPD's standard Advice of Rights Form and Waiver and read Lake all of the rights delineated on that form. The form stated that Lake had the right to remain silent; that anything he said could be used against him in court; that he had the right to talk to a lawyer before VIPD asked any questions; that he had the right to have a lawyer present for questioning; that if he could not afford a lawyer, one would be appointed to him before any questioning began; and that if he decided

to answer any questions without a lawyer present, he had the right to stop answering at any time. Lake made no comments prior to being advised of his rights, and, after being read his rights, Lake indicated that he understood them and wanted to answer VIPD's questions. Both Detective Thomas and Detective George testified that if Lake had invoked his right to remain silent or had requested an attorney, then Lake would have had the right to leave, but that he did not invoke his right to remain silent, he did not request that an attorney be present, nor did he ask to leave. Detective Thomas, who has been with the department for 22 years and is assigned to the major crimes unit, testified that Lake was calm and cooperative and displayed no stress. She said Lake seemed of typical intelligence with no cognitive or mental issues and he did not appear to be under the influence of drugs or alcohol during the interview. Detective Thomas testified that law enforcement made no promises to Lake, they did not threaten him nor pressure him to give a statement. Detective Thomas also testified that law enforcement had previous contact with Lake, he had four prior arrests, he had been *Mirandized* on each of those occasions, and on one such occasion, Lake declined to answer any questions.

¶12    After being *Mirandized*, Lake stated that he understood his rights and that he wanted to sign the waiver. At 3:32 p.m., Lake signed the Advice of Rights Form and Waiver. Detective Thomas testified that she observed Lake sign the waiver, and that after signing it, he stated that he wanted to provide a statement. The interview lasted approximately 4.0 hours.

¶13    Detective George was the lead detective and conducted the questioning. He used a standard narrative form for the interview; he wrote down his questions as well as Lake's responses.[5] Lake did not confess to the murder. Instead, Lake denied shooting the victim and provided an alibi. At no time during the questioning did any of the officers threaten Lake, make promises to him, or raise their voices. Neither Detective George nor Detective Thomas could remember if Lake was handcuffed during his interrogation. The officers did not mention to Lake that they were investigating Callwood's murder prior to questioning him. Rather, Detective Thomas testified that when the officers asked Lake if he knew why he was being asked questions, Lake stated that it was because his name came up in Garnet's murder.[6] After questioning concluded, Lake read over his statement and signed it.

¶14    After Lake signed his statement, the officers drove him directly to where he requested: a restaurant in Smith Bay, St. Thomas, U.S. Virgin Islands. Detective Thomas testified that Lake made no statements related to the criminal investigation during the car ride to Smith Bay. Detective George testified that Lake did not appear under stress at any point during the car ride to Smith Bay. Both Detective Thomas and Sergeant Stout testified that Lake even offered them food when they arrived at

---

[5] VIPD did not record the interview by audio or video. Detective George memorialized the entire interview as it took place, writing each question and Lake's answer to each question.
[6] "Garnet" was a nickname for Alldix Callwood.

his destination. VIPD did not bar Lake from leaving the island, and he flew out the following day.

¶15 Approximately five months later, VIPD arrested Lake for the first-degree murder of Callwood.

## DISCUSSION

### I. Timeliness of Motion to Suppress

#### A. Legal Standard

¶16 Virgin Islands Criminal Procedure Rule 12 addresses pleadings and pretrial motions. V.I. R. Crim. P. 12(b)(3) lists the various motions parties can raise before trial, including a motion to suppress evidence. *Id.* § 12(b)(3)(C). V.I. R. Crim. P. 12(c) addresses deadlines for pretrial motions and the consequences for failing to timely file such a motion. *Id.* § 12(c). The rule specifically states that "[t]he court may, at the arraignment or as soon afterward as practicable, set a schedule for discovery and other proceedings, and may establish a deadline for the parties to make pretrial motions . . ." *Id.* § 12(c)(1). The rule further states that "[i]f a party does not meet the deadline for making a 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request upon a showing of good cause or in the interests of justice." *Id.* § 12(c)(3).

¶17 Virgin Islands courts have not yet interpreted the term "in the interests of justice," but this Court has previously stated that the "interests of justice" does

include elements of "fairness and efficient judicial administration." *See People v. Frett*, No. ST-2018-CR-00208, 2020 V.I. LEXIS 38, at *5 (V.I. Super. Ct. 2020). Additionally, this Court has previously opted to consider the merits of a motion, rather than decide based on its untimeliness, when there are potential constitutional violations at stake. *See People v. Williams*, No. ST-2018-CR-00040, 2018 V.I. LEXIS 125, at *5 (V.I. Super. Ct. 2018) (considering a potential Fifth Amendment violation and finding that "[i]n view of the weightiness of the issues . . . the Court cannot decline to remove the stain merely because a pretrial motion deadline was not met.").

### B. Analysis

¶18    The threshold issue is whether Lake's motion to suppress was sufficiently untimely as to deny consideration on its merits.[7] The People's motion to strike the Defendant's motion to suppress argues that the motion to suppress is untimely. The original Scheduling Order was entered on March 8, 2018. It set a motions' hearing for September 4, 2018, and it required the parties to file pretrial motions thirty (30) days prior to such hearing, pursuant to V.I. R. Crim. P. 12(c)(1). However, Lake filed his motion to suppress over two years after the motions' deadline delineated in the Scheduling Order. Thus, the motion to suppress is clearly untimely under V.I. R. Crim. P. 12(c) and the Scheduling Order. However, the Court notes that the trial of this matter had been continued for various reasons, and as of the date of the filing of

---

[7] The People's motion to strike is incorporated in its opposition to the Defendant's motion to suppress.

the motion to suppress, has been delayed due to the Covid-19 pandemic. Therefore, the untimely filing of the motion to suppress has not delayed the matter. The Court finds that, in the "interests of justice", it should consider the motion to suppress, particularly since it raises constitutional arguments. Thus, the motion to strike will be denied.

## II. Motion to Suppress Post-*Miranda* Statement

### A. Legal Standard

¶19 The Fifth Amendment to the United States Constitution states, in pertinent part, "no person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . ." U.S. Const. amend. V. The Fifth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954. *Simmonds v. People*, 59 V.I. 480, 491 (V.I. 2013) (stating that Congress intended for "the Fifth Amendment to have the same effect in the Virgin Islands as it does in the states").

¶20 The Sixth Amendment to the United States Constitution states, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment is applicable to the Virgin Islands pursuant to § 3 of the

Revised Organic Act. *Rivera-Moreno v. Government of the Virgin Islands*, 61 V.I. 279, 318 n.11 (V.I. 2014).

¶21    Interpreting the Fifth and Sixth Amendments, the United States Supreme Court has held "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Ramirez v. People*, 56 V.I. 409, 418 (V.I. 2012) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 513 (1966)). Such "procedural safeguards"—typically referred to as *Miranda* warnings—require a suspect be advised prior to questioning that:

> [H]e has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479.

¶22    *Miranda* warnings are required for "statements which are the product of custodial interrogation." *Castillo v. People*, 59 V.I. 240, 265 (V.I. 2013) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). A suspect is "in custody" when they have been "deprived of freedom of action in any significant way." *Ramirez*, 56 V.I. at 419 (citing *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007)). "Inquiries, statements or conduct by police officers which in light of the suspect's character are reasonably calculated to elicit from a suspect an incriminating response constitute an

interrogation for purposes of the *Miranda* rule." *Castillo* 59 V.I. at 265 (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 600-01 (1990)).

¶23 A suspect can waive their rights by "choosing to give a statement after the required warnings have been given." *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 485–86 (1981)). Waiver of one's *Miranda* rights must be "knowing, voluntary, and intelligent when made as a product of the defendant's uncoerced choice at a time when the defendant understood the nature of the rights being waived and the consequences of the waiver." *People v. Assam*, No. ST-2016-CR-00232, 2017 V.I. LEXIS 157, at *3 (V.I. Super. Ct. Nov. 14, 2017) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

¶24 In a motion to suppress a statement of the accused, the burden ordinarily rests upon the defendant to establish that the evidence sought to be suppressed was illegally obtained. *Assam*, 2017 V.I. LEXIS 157, at *2. Once a violation of *Miranda* is "claimed and the accused alleges facts demonstrating that the accused was in custody and subject to interrogation, the burden shifts to the People to prove by a preponderance of the evidence that the police complied with *Miranda* and that the statement was voluntary." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).

### B. Analysis

¶25 Defendant Lake argues VIPD violated his *Miranda* rights. For *Miranda* to apply, a suspect must be (1) in custody and (2) subject to interrogation at the time a

statement is made. *Castillo*, 59 V.I. at 265. The parties agree that Lake was "in custody" when he was questioned. The parties further agree that the VIPD questioning constituted an "interrogation" under *Miranda*. VIPD was required to provide Lake with the associated warnings before they conducted the interview. *Castillo*, 59 V.I. at 265. Lake concedes that he was read his *Miranda* rights and signed the Advice of Rights Form and Waiver. However, Lake argues that his waiver and subsequent statement were not freely given and that VIPD therefore violated his *Miranda* rights, because the questioning caused him to miss his flight, he was questioned by numerous officers, including a federal official, and he was "threatened [with] arrest" if he did not comply with the *subpoena ad testificandum*. The People counter that Lake knowingly, voluntarily, and intelligently waived his *Miranda* rights. Therefore, the issue before this Court is whether Lake's waiver of his *Miranda* rights and subsequent statement were voluntary with no coercion by law enforcement.

¶26    Given Lake's claim of a *Miranda* violation, it is the People's burden to show that VIPD complied with *Miranda* and that Lake's waiver and statement were in fact voluntary. *Assam*, 2017 V.I. LEXIS 157, at *2 (citing *Connelly*, 479 U.S. at 157). "An express written or oral statement of waiver of [a *Miranda* right] is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *Castillo*, 59 V.I. at 263 (quoting *N. Carolina v. Butler*, 441 U.S. 369, 373 (1979)). Further determining the validity of a waiver is "whether the

defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *Id.* To be "knowing and voluntary," a waiver must be made with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Berghuis v. Thompkins*, 560 U.S. 370 (2010)).

¶27    Lake did not ask any questions or attempt to invoke his *Miranda* rights, either prior to or after receiving those rights both orally and in writing. Lake indicated he understood and agreed to waive the rights written on the Advice of Rights Waiver and Form. In addition, Lake was aware of the reason for questioning as when asked "do you know why you are here today?", he replied, "I am here because my name got called up in Garnet murder." The Court finds these factors support the People's argument that Lake's statement and waiver were given knowingly and voluntarily, because he acknowledged and understood his rights, and still agreed to waive them. Further, regarding the sufficiency of Lake's waiver, the People rely heavily upon *People v. Assam*, which articulates factors a court should consider when addressing the legitimacy of a *Miranda* waiver. *See Assam*, 2017 V.I. LEXIS 157, at *2. *Assam* held that "[t]o determine the validity of a *Miranda* waiver, courts review the totality of the circumstances based upon such factors as the suspect's intelligence and education, age, familiarity with the criminal justice system, physical and mental

condition, drug or alcohol problems, language barriers, and time lapse between the reading of the *Miranda* rights and the questioning or statement." *Id.* at *3.[8]

¶28 The People point out Lake was approximately 25 years old at the time of the interview; there is no information to show Lake is not of typical physical and mental capacity; there is no evidence Lake has a drug or alcohol problem; Lake indicates that he reads, writes, and understands English; and the officer's report states that Lake received his *Miranda* warnings concurrent with the interview. Thus, the People argue that Lake's waiver was valid under *Assam*.

¶29 Detective Thomas' testimony at the suppression hearing supports those arguments and the Court heard no testimony to the contrary. Lake is not inexperienced in criminal matters, as he had previously been arrested and advised of his rights on multiple occasions, on one occasion even refusing to answer any questions. In the present instance he stated that he knew why he was being questioned. The witnesses, including one called by Lake, stated that they would have stopped the interview if Lake had asked for an attorney. The witnesses also consistently testified that Lake was not stressed, he spoke willingly, and offered food

---

[8] In establishing the factors discussed in *Assam*, the Court cites as examples: *United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002) (illiterate defendant); *United States v. Spruill*, 296 F.3d 580, 589-90 (7th Cir. 2002) (9th grade education); *United States v. Burrows*, 147 F.3d 111, 116 (2d Cir. 1998) (16 year old); *United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005) (numerous prior contacts); *United States v. Cristobal*, 293 F.3d 134, 142 (4th Cir. 2002) (surgery, pain, and narcotic medications); *United States v. Palmer*, 203 F.3d 55, 60-61 (1st Cir. 2000) (heroin withdrawal and antidepressants); *Clagett v. Angelone*, 209 F.3d 370, 382 (4th Cir. 2000) (intoxication); *United States v. Sriyuth*, 98 F.3d 739, 750 (3d Cir. 1996) (Thai immigrant in U.S. for 9 years).

to the officers when they gave him a ride to a restaurant after the interview. The Court finds that Lake understood the nature of the right being abandoned and the consequences of the decision to abandon those rights. Therefore, the Court agrees with the People that analysis of the aforementioned factors displays Lake's awareness and willingness to give a statement following the *Miranda* warning, such that Lake's waiver and statement were voluntary.

¶30    Additionally, the Court finds no evidence of intimidation or coercion by VIPD in the testimony or exhibits received at the suppression hearing. "Under the Fifth Amendment '[a] statement is involuntary when it [is] extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination.'" *Castillo*, 59 V.I. at 266 (quoting *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)). A waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (quoting *Berghuis*, 560 U.S. at 370). Although there were several officers in the room while Lake faced questioning, Detective Thomas testified that at no time during the interview did the officers make threats or promises or raise their voices. Additionally, the officers' testimony indicates that Lake was calm, cooperative, and did not seem intimidated or concerned about the questioning during the course of the interview or thereafter. Again, Lake's offer of food to the officers after the interrogation is partial proof that Lake was not intimidated or stressed by the law enforcement officers. Lake never indicated he was intimidated or threatened, and he

told the officers he understood and agreed to waive his *Miranda* rights. In addition, the officers took no action that constituted intimidation or threats. The Court therefore finds that Lake understood the nature of the rights being waived and the consequences of the waiver. The Court finds that Lake's statement was voluntary and was not due to threat, intimidation, or coercion. Therefore, given the voluntary and knowing nature of Lake's waiver and statement, the satisfaction of the *Assam* factors establishing a valid waiver, and the lack of coercion or intimidation by VIPD, the People have met their burden.

¶31　Lake further argues that the use of a *subpoena ad testificadum* was improper and coercive because V.I. R. Crim. P. 17(h), governing subpoenas, states that "no party may subpoena a statement of a witness or of a prospective witness under this rule." V.I. R. Crim. P. 17(h). However, the Virgin Islands Rules of Criminal Procedure "govern the procedure in all criminal proceedings – including procedures *following arrest*, with or without a warrant . . . in the Superior Court of the Virgin Islands." V.I. R. Crim. P. 1(c)(1) (emphasis added). In addition, the Advisory Note to Rule 1 makes clear, "The Virgin Islands Rules of Criminal Procedure . . . govern the procedure in all criminal proceedings in the Superior Court of the Virgin Islands except as otherwise stated in these rules . . ." V.I. R. Crim. P. 1 advisory committee's note to 2017 adoption. There is no doubt that when Lake was interrogated, he had not yet been arrested, and there was no criminal case pending against him in the Superior Court regarding the death of Alldix Callwood. Therefore, the V.I. Rules of Criminal

Procedure did not govern nor preclude the issuance of the *subpoena ad testificandum* or Lake's interrogation. Furthermore, as the People point out, the Office of the Attorney General has the authority to issue subpoenas when investigating a crime. V.I. Code Ann. tit. 4 §601.

¶32 Nevertheless, the Court will analyze the subject subpoena. The subject *subpoena ad testificandum*, marked and admitted into evidence during the suppression hearing as People's Exhibit M-1, states that "failure to appear at such time and place (as set forth therein) may lead to the issuance of a WARRANT FOR YOUR ARREST . . ." Therefore, the subpoena did not threaten Lake with an arrest or attempt to compel a statement, but rather stated that Lake's failure to *appear* at the requested time "may" initiate a "warrant for" his arrest. In this instance, the subpoena did not contain a date and time to appear. The language of the subpoena does not display a threat of arrest, and there is nothing in evidence showing any of the officers on the scene were threatening Lake with arrest. Therefore, the Court finds that V.I. R. Crim. P. 17(h) does not apply to the subpoena used to stop and detain Lake, because the Attorney General has the authority to issue subpoenas when investigating crimes and the language of the subpoena contained no threat of arrest for refusing to answer questions. In addition, there is no evidence that any threat of arrest or coercion was displayed by VIPD. The Court finds that the Office of the Attorney General had the right to issue the subject subpoena and it did not contain an unlawful threat. Thus, the subpoena was valid and not unlawful.

## CONCLUSION

¶33    Defendant's motion to suppress was *per se* untimely pursuant to V.I. R. Crim.

P. 12(c). However, the Court finds it is in the interests of justice to address the motion

on its merits. Therefore the motion to strike will be denied.

¶34    The Court finds that, based upon the evidence and testimony presented during

the suppression hearing, the People met their burden to show that Lake's waiver and

subsequent statement were voluntary and there was no coercive conduct when VIPD

took Lake's statement. Therefore, the Court finds that Lake's statement was not

obtained in violation of *Miranda*. Accordingly, the Court will deny the Lake's motion

to suppress.

An order consistent herewith will immediately follow.

DATED:  October 14, 2021

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor 10/15/2021